POSTAL COMMUNITY CREDIT UNION *vs.* COMMISSIONER OF
BANKS.

No. 03-P-1063.

Suffolk. January 7, 2004. - July 27, 2004.

Present: GRASSO, COWIN, & DOERFER, JJ.

*Commissioner of Banks. Credit Union. Bank. Federal Preemption.*

This court concluded that Congress, in amending the Federal Credit Union
Act, 12 U.S.C. §§ 1751 et seq. (2000), to permit a federally insured credit
union to convert to a mutual savings bank without the prior approval of the
National Credit Union Association, did not intend to preempt State regula-
tion of credit union conversions, where neither the general language of the
statute nor the specific exemption in 12 U.S.C. § 1785(b)(2)(A) (2000)
suggested anything other than a congressional interest in reconfiguring
Federal regulatory requirements. [566-569]
In a civil action seeking a judgment declaring that the defendant Commis-
sioner of Banks (commissioner) was without authority to prohibit the
plaintiff credit union from converting from a State-chartered, federally
insured credit union to a federally insured mutual savings bank, the judge
erred in granting summary judgment in favor of the plaintiff, where G. L.
c. 171, § 6A, did not authorize State-chartered credit unions to exercise
any power or engage in any activity permissible for a Federal credit union
without limits, but rather in accordance with regulations promulgated by
the commissioner and filed with the General Court. [569-574]

CIVIL ACTION commenced in the Superior Court Department on
October 15, 2002.

The case was heard by *Allan van Gestel,* J., on a motion for
summary judgment.

*Mark S. Furman (John D. Stuebing* with him) for the plaintiff.

*Thomas A. Barnico,* Assistant Attorney General, for the
defendant.

COWIN, J. The plaintiff, Postal Community Credit Union, a
federally insured credit union chartered pursuant to G. L. c. 171,
sought to convert its charter from that of a State-authorized

credit union to that of a federally chartered mutual savings bank. The defendant, the Commissioner of Banks (commissioner), ordered the plaintiff to desist taking any further action to bring about the conversion.[1] On the plaintiff's complaint for declaratory and other relief, a judge of the Superior Court, by means of a summary judgment, declared that the plaintiff "has a right under a combination of G. L. c. 171, [§ ] 6A and 12 U.S.C. [§ ] 1785(b)(2)(A) to convert from a state chartered, federally insured, credit union to a federally chartered mutual savings bank," and that the commissioner was without authority to prohibit the exercise of that right. Accordingly, the judge declared "null, void and of no effect" the commissioner's "Orders and Directions" precluding the plaintiff from pursuing the conversion. At the same time, the judge rendered summary judgment in favor of the commissioner on the plaintiff's claim that the commissioner, acting under color of State law, had deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. See 42 U.S.C. § 1983 (2000).

The parties cross-appealed. The commissioner argues in essence that the State statutory scheme preserves the right of the Division of Banks and Loan Agencies (division) to regulate conversions of this nature, and that applicable Federal law has not altered that power. The plaintiff asserts that the judge erred in denying it summary judgment on its 42 U.S.C. § 1983 claim. The effect of the interaction between 12 U.S.C. § 1785(b)(2)(A) (2000) and G. L. c. 171, § 6A, on the powers of the plaintiff and the commissioner is far from clear.[2] Nevertheless, we do not discern an intention on the part of either Congress or the General Court to strip State regulators of authority they have traditionally exercised. Consequently, we reverse the declaratory judgment entered in favor of the plaintiff. Because we conclude that the commissioner has not exceeded his lawful authority in

---

[1]The commissioner is in charge of the Division of Banks and Loan Agencies within the Department of Banking and Insurance. See G. L. c. 26, § 1.

[2]Indeed, the judge recognized the difficulty, stating, "If this Court is reading the situation other than the Legislature intended, then the Legislature, not this Court, must clarify G. L. c. 171, [§ ] 6A to make it consistent with its intent."

the circumstances, we affirm the judgment in favor of the commissioner on the plaintiff's claims under 42 U.S.C. § 1983.

1. *Background.* The material facts and prior proceedings are not disputed. The plaintiff is a State-chartered industrial credit union with a principal place of business in Boston. Its shares and deposits are insured by the National Credit Union Share Insurance Fund, thereby subjecting it to applicable Federal statutes, rules, and regulations. Determining that certain changes in its charter provisions were desirable from the viewpoint of its long-term business interests,[3] the plaintiff submitted to the regional director of the National Credit Union Administration (NCUA), the administrator of the Federal Credit Union Act, see 12 U.S.C. §§ 1751 et seq. (2000), a written request for preliminary approval of the procedures to follow to convert to a federally chartered mutual savings bank.[4]

The commissioner forthwith notified the NCUA of his objection to the proposed conversion, and directed that the plaintiff's board of directors meet with him on the subject. See G. L. c. 167, § 3. At the close of the meeting, the commissioner issued "Orders and Directions" providing that the plaintiff "shall not take any action in furtherance of the proposed conversion or any other form of corporate restructuring." The orders expressly precluded any further applications or expenditures on the subject, and forbade any meeting of the membership without prior written approval by the division. The orders did, however, permit the plaintiff to expend funds in connection with any effort to seek a judicial determination with respect to its right to pursue the proposed conversion.[5]

To the extent that past administrative practice on the subject

---

[3]The conversion sought by the plaintiff would enable it to offer a wider array of products and services to a broader customer base; operate in a wider geographic area; and presumably increase its opportunities to operate profitably.

[4]The plaintiff had previously filed an application with the division seeking approval of a conversion from an industrial credit union to a community credit union. That application was still pending at the time of the Superior Court decision.

[5]At the request of the plaintiff, the commissioner subsequently clarified certain of the restraints contained in the "Orders and Directions," although the substance of the restriction, i.e., that the plaintiff could not lawfully convert to a Federal mutual savings bank, remained in place.

is relevant, the division has not interfered with conversions by State-chartered credit unions to federally chartered credit union status. It has never acted favorably on a so-called "cross industry" application whereby a State-chartered credit union sought to convert to a federally chartered savings bank.

2. *Discussion.* Because the plaintiff is part of a system of dual (Federal and State) regulation, see *First Natl. Bank in Plant City, Fla.* v. *Dickinson,* 396 U.S. 122, 133 (1969), its effort to convert invokes consideration of the applicable laws of each jurisdiction. As the plaintiff observes, prior to 1998, Federal law prohibited the conversion of a federally insured credit union to a mutual savings bank absent the prior written approval of the NCUA. See Pub. L. 105-219, § 202, 105th Cong., 2d Sess. (1995). By regulation, see 60 Fed. Reg. 12659-12660, 12662 (1995), the NCUA established that prior approval of the applicable State regulator was a condition to the obtaining of NCUA's approval of the conversion.

The Federal landscape was altered in 1998 when Congress amended the Federal Credit Union Act to provide, in relevant part, that "an insured credit union may convert to a mutual savings bank . . . without the prior approval of the [NCUA], subject to the requirements and procedures set forth in the laws and regulations governing mutual savings banks." 12 U.S.C. § 1785(b)(2)(A). While other parts of § 1785(b)(2) establish procedures governing the decision by the credit union to convert, and vest in the NCUA the authority to ensure that procedures applicable to the member vote are followed, see, for example, § 1785(b)(2)(G)(ii), the amended statute does not empower the NCUA to approve or disapprove the conversion. The plaintiff argues that the amended Federal statute authorizes the proposed conversion and precludes State regulators from interfering.

In the alternative, the plaintiff relies on G. L. c. 171, § 6A, added the same year as the Federal amendment, which provides in relevant part:

"Notwithstanding other provisions of this chapter, a credit union organized under the provisions of this chapter

and insured by the National Credit Union Share Insurance Fund may exercise any power and engage in any activity that is permissible for a credit union organized under the provisions of the Federal Credit Union Act in accordance with regulations promulgated by the commissioner pursuant to this section; provided, however, that any such activity is not otherwise prohibited. In determining whether or not to authorize any such activity, the commissioner shall also determine whether or not competition among credit unions will be unreasonably affected and whether public convenience and advantage will be promoted. Said commissioner shall promulgate regulations necessary to carry out the provisions of this section. . . .

"Said commissioner shall file the proposed regulation . . . with the clerk of the house of representatives . . . . No such regulation shall take effect until 90 days after it has been so filed . . . ."[6]

G. L. c. 171, § 6A, as inserted by St. 1998, c. 223.

The plaintiff contends that, even if 12 U.S.C. § 1785(b)(2)(A) leaves to the States the authority to regulate conversions of the type proposed, the Massachusetts Legislature intended, by means of G. L. c. 171, § 6A, to duplicate the Federal easing of restrictions, and consequently removed from the commissioner any authority to prevent such conversions from taking place.

The motion judge decided the case expressly on an interpretation that G. L. c. 171, § 6A, in accordance with the view of the plaintiff, permitted the conversion without the approval of the commissioner. He did not address the plaintiff's contention, apparently not emphasized at that stage of the proceeding, that the 1998 amendment to 12 U.S.C. § 1785(b)(2)(A) had by itself withdrawn all power over the subject from the commissioner, although by implication he appears to have rejected it. We first consider the plaintiff's proposition that § 1785(b)(2)(A) is preemptive, because, if Congress intended to have the last and

---

[6]The ninety-day period "shall not include days when the general court is prohibited by law or rule from meeting in formal session." G. L. c. 171, § 6A.

only word on the subject, the meaning of the Massachusetts statute is academic.[7]

Recognizing that the supremacy clause, see United States Constitution, art. VI, cl. 2, does not tolerate a conflict between Federal and State law on a given subject, and that preemption may be implied as well as express, see *Massachusetts Assn. of Health Maintenance Orgs.* v. *Ruthardt,* 194 F.3d 176, 178 (1st Cir. 1999), we do not discern in 12 U.S.C. § 1785(b)(2)(A) an intention to displace traditional State regulation. The language of the statute suggests that Congress entertained a more modest objective, specifically, to relieve federally insured credit unions of the necessity of dealing with the NCUA before undertaking the kind of conversion in question.

The context is important. The principal thrust of 12 U.S.C. § 1785(b) is restrictive. Thus, § 1785(b)(1) provides that insured credit unions shall not, absent the prior approval of the board of the NCUA, merge or consolidate with a noninsured credit union or institution; assume certain liabilities of any non-insured credit union or institution; transfer assets to any noninsured credit union or institution in connection with the assumption of liabilities by the transferee; or convert into a noninsured credit union or institution. Accordingly, NCUA board approval is a prerequisite for the taking, by the insured credit union, of any of those actions. As an exception to that policy, Congress enacted § 1785(b)(2)(A), by which an insured credit union may convert to a mutual savings bank or savings association in mutual form *without* NCUA approval. Neither the general language of § 1785(b)(1) nor the specific exemption effected by § 1785(b)(2)(A) suggest anything other than a congressional interest in reconfiguring *Federal* regulatory requirements. An inference that Congress opaquely sought also to affect *State* regulation of the subject matter is, in our view, an unwarranted stretch.

"[A] statute should not be read in derogation of a State's sovereign interests unless it clearly appears that Congress so

---

[7]The commissioner contends that the plaintiff has not adequately preserved the issue of preemption for appellate review. It appears that the issue was raised and argued below. In any event, we prefer to address the question on the merits.

intended . . . ." *Apkin* v. *Treasurer & Receiver Gen.*, 401 Mass. 427, 431 (1988). As we have indicated, the language of 12 U.S.C. § 1785(b)(2)(A) does not address State regulation. Furthermore, the interpretation sought by the plaintiff would, as the commissioner argues, sweep away State regulation with respect to conversions by State-chartered entities to other State-chartered entities,[8] an unlikely subject for Federal preemption. NCUA has not interpreted the statute as preempting State laws governing conversions by State-chartered, federally insured credit unions. See 63 Fed. Reg. 65532-65533 (1998); 64 Fed. Reg. 28733-28734 (1999).

The plaintiff relies on 12 U.S.C. § 1785(b)(2)(G)(i), whereby Congress directed that NCUA promulgate, within six months, regulations that are no more restrictive than those for converting other types of financial institutions, thus effectively repealing the prior NCUA regulatory requirement, see 60 Fed. Reg. 12659, 12662 (1995), that there be State approval of conversion by a federally insured credit union. This provision is wholly consistent with our view that Congress intended to affect the Federal regulatory process only. It seems obvious that, if NCUA regulation of conversions of this type was to be eliminated, preexisting regulatory requirements, such as that of prior State approval, would be eliminated as well, and that new regulations would be expected to reflect such changes. We are not persuaded that the provision is a subtle congressional hint that State regulators now are without power to deal with the subject matter. Congressional preemption is ordinarily effectuated by a clear command that Federal law is to control and that States are without authority. Given the long-term congressional adherence to the dual regulatory environment in which banks and credit unions operate, we are not convinced that there has been a clear command that that familiar system be abandoned with respect to these conversions. In the absence of such clarity, we conclude that § 1785(b)(2)(A) does not have preemptive effect.

We turn to the plaintiff's principal argument. The plaintiff as-

[8]This is so because § 1785(b)(2)(A) authorizes the conversion of a federally insured credit union to "a mutual savings bank or savings association . . . as those terms are defined in [12 U.S.C. § ] 1813," thus sweeping within the purported authorization a number of purely State-chartered institutions.

serts that, even assuming that Congress did not intend to preempt State regulation of this type of conversion, the Massachusetts Legislature has itself determined, by means of G. L. c. 171, § 6A, that a federally insured credit union shall be permitted to convert in the fashion proposed by the plaintiff without interference by the commissioner. In support of this proposition, the plaintiff points to the language of § 6A that provides that a federally insured credit union organized under Massachusetts law "may exercise any power and engage in any activity that is permissible for a credit union organized under the provisions of the Federal Credit Union Act." From this, the plaintiff reasons that, because 12 U.S.C. § 1785(b)(2)(A) now authorizes conversions of this kind by Federal credit unions without regulatory approval, G. L. c. 171, § 6A, added the same year as the adoption of the Federal policy, was intended to duplicate that relief from regulation with respect to similar conversions by Massachusetts-organized institutions.

This is not an implausible interpretation, and the motion judge adopted it, albeit with some apparent misgivings. However, we differ with the judge because we believe that his construction of G. L. c. 171, § 6A, fails to give weight to all of the statute's provisions, and thus does not accurately identify the legislative intentions underlying the enactment.

The judge began by recognizing, in our view correctly, that the kind of cross-industry conversion contemplated by the plaintiff requires express legislative authorization. See *Chicopee Co-op. Bank* v. *Board of Bank Incorporation*, 347 Mass. 744, 750-751 (1964). He then proceeded to locate that express authority in the provisions of G. L. c. 171, § 6A, identifying as "the key part" the sentence that authorizes a federally insured credit union to "exercise any power and engage in any activity that is permissible for a [Federal] credit union . . . in accordance with regulations promulgated by the commissioner pursuant to this section; provided, however, that any such activity is not otherwise prohibited." Because the proposed conversion is not expressly prohibited elsewhere in the statutes, the judge reasoned that the conversion was therefore authorized without the requirement of additional regulatory approval. There are three provisions in § 6A that suggest otherwise.

First, whatever authorization is created by G. L. c. 171, § 6A, that authorization is not wholly unlimited or self-executing. Rather, the covered credit unions are authorized to exercise any power and engage in any activity "in accordance with regulations promulgated by the commissioner pursuant to this section." The same paragraph states that the "commissioner shall promulgate regulations necessary to carry out the provisions of this section." It is not disputed that, at the time of the plaintiff's proposed conversion, the commissioner had promulgated no regulation regarding the subject matter. The absence of a regulation at the material time suggests the possibility that, without any limitation imposed administratively, the statute itself operates to authorize the conversion. However, the provisions of the statute indicate that the Legislature expected that the commissioner would influence credit union action under § 6A at least to some extent, and that the commissioner's role would not be merely procedural or perfunctory.

Thus, G. L. c. 171, § 6A, provides that "[i]n determining whether or not to authorize any such activity, the commissioner shall also determine whether or not competition among credit unions will be unreasonably affected and whether public convenience and advantage will be promoted." The interpretation sought by the plaintiff renders this provision meaningless. The statute refers expressly to authorization by the commissioner of the credit union's activity, thereby rebutting the inference that the statute conferred unrestricted rights. Indeed, the statute even goes on to instruct the commissioner that, in deciding whether to grant authorization, the commissioner must consider the competitive effect of the proposed activity, as well as its impact on the public. This is hardly consistent with a legislative intention to grant covered institutions the right to take action free of regulatory scrutiny.

Finally, G. L. c. 171, § 6A, not only requires that the commissioner promulgate regulations, but that, except with respect to emergency regulations, see G. L. c. 30A, § 2, such regulations must be submitted to the General Court and must not take effect until ninety days after filing (certain periods excluded). The Legislature does not ordinarily display this level of interest in administrative regulations. The fact that the Legislature has

done so here strongly indicates that it anticipates that the regulations will be substantive, and wishes to be in a position quickly to alter anything it deems inconsistent with desirable regulatory policy regarding the subject matter. This entire exercise would be purposeless had it been the Legislature's intention to exempt these conversions from the commissioner's oversight.

The plaintiff argues that the Legislature, if it desired, could have expressly conditioned conversions of this kind upon prior approval by the commissioner. As we have indicated, we conclude that G. L. c. 171, § 6A, in fact contains an express requirement of a different kind, i.e., the requirement that conversions be in accordance with regulations duly promulgated and filed with the General Court. We agree with the commissioner that, if anything, this imposes a higher prior approval standard than those statutes that merely call for approval by the commissioner. See, for example, G. L. c. 171, §§ 2, 3, 6, 8, and 16. A more illuminating contrast is found in G. L. c. 170, § 28, wherein the Legislature authorized the conversion of cooperative banks to Federal savings and loan associations or Federal savings banks without the participation of the commissioner at all (other than his approval of the form of the letter notifying shareholders of the proposed change). Accordingly, it is clear that the Legislature knows how to remove the commissioner from a substantive role in the conversion process when it wishes to do so; G. L. c. 171, § 6A, does not reflect such a legislative judgment.

Likewise, we are not persuaded by the plaintiff's reliance on the reference in G. L. c. 171, § 6A, to authorization of a covered credit union to "exercise any power and engage in any activity" permissible for a Federal credit union, followed by the reference to authorization by the commissioner of "any such activity." The plaintiff argues from this juxtaposition of words that exercising a power and engaging in an activity are different, and that the commissioner's regulatory authority extends only to the latter. The plaintiff then posits that conversion is the exercise of a power as opposed to engaging in an activity, thus freeing it from the commissioner's authority. This is a distinction of considerable subtlety, and we do not believe that the Legislature intended a regulatory judgment of this importance

to turn on such a refinement. We conclude, instead, that the reference to authorization by the commissioner of "any such activity" is meant to encompass all of the actions that a credit union may undertake pursuant to this statute.

As a last resort, the plaintiff urges us to decide that, despite the commissioner's stance in this proceeding, he has in fact authorized conversions of this type by means of a regulation. The plaintiff cites in this regard the provision of 209 Code Mass. Regs. § 50.02(2) (1999) to the effect that powers exercised pursuant to 209 Code Mass. Regs. §§ 50.00 et seq. are in addition to other powers granted to credit unions under the General Laws, and that "[t]he express powers granted to credit unions under the General Laws are not limited or otherwise restricted by 209 [Code Mass. Regs. §§ ] 50.00 et seq."[9] The short answer to the plaintiff's proposition is that, as we have set forth, G. L. c. 171, § 6A, does not authorize unlimited conversions of this kind; accordingly, no power has been granted in the first place, and the regulation forswearing restrictions on such a power is of no import.

We conclude by observing that our construction of G. L. c. 171, § 6A, is consistent with the interpretation of the division. The subject of bank regulation, particularly the interplay between Federal and State authorizations and requirements, is highly complex, and the views of the administrative agency that has dealt extensively with the subject matter are entitled to deference. See *Adams* v. *Contributory Retirement Appeal Bd.*, 414 Mass. 360, 367 (1993); *MCI Telecommunications Corp.* v. *Department of Telecommunications & Energy*, 435 Mass. 144, 150-151 (2001). The commissioner argues reasonably that restrictions on cross-industry conversions are of long standing in Massachusetts; are well known to the Legislature; and would

---

[9]The entire regulation provides: "Any power authorized and exercised pursuant to 209 [Code Mass. Regs. §§ ] 50.00 et seq. shall be independent from, and in addition to, any other powers granted to credit unions under applicable General Laws, or regulations promulgated thereunder. The express powers granted to credit unions under the General Laws are not limited or otherwise restricted by 209 [Code Mass. Regs. §§ ] 50.00 et seq." 209 Code Mass. Regs. § 50.02(2).

not be removed without a legislative mandate of undoubted clarity. We agree.[10]

3. *Conclusion.* Paragraphs 1, 2, and 3 of the Superior Court judgment are reversed. The commissioner is entitled to summary judgment in his favor on that subject matter. See Mass.R. Civ.P. 56(c), 365 Mass. 824 (1974) ("Summary judgment, when appropriate, may be rendered against the moving party"). Accordingly, a declaration that the plaintiff is without authority to convert to a federally chartered mutual savings bank shall be entered. Paragraph 4 of the Superior Court judgment is affirmed.

*So ordered.*

---

[10]We acknowledge the plaintiff's point that it could have accomplished in two steps what, under the commissioner's ruling, it is forbidden to do in one. Specifically, it could first have availed itself of the division's practice of permitting conversion by a State-chartered credit union to a federally chartered credit union, then converted to a federally chartered mutual savings bank under Federal law. If so, it is a peculiarity attendant on the intersecting regulatory systems; it does not alter the apparent meaning of G. L. c. 171, § 6A.