MRI Associates, Inc. & others[1] vs. Department of Public Health.

No. 06-P-1339.

Suffolk. May 7, 2007. - October 2, 2007.

Present: Green, Smith, & Grainger, JJ.

*Department of Public Health. Public Health,* Determination of need, Magnetic resonance imaging. *Administrative Law,* Agency's interpretation of statute, Regulations, Substantial evidence.

Discussion of the statutory scheme for the determination of need in the context of the transfer of health clinic operations to different locations pursuant to G. L. c. 111, § 25C. [340-341]

A Superior Court judge properly concluded that the Department of Public Health (department) acted within its authority under G. L. c. 111, § 25C, in adopting regulations requiring a needs analysis of any request by a health care facility to transfer its location [341-342]; that the regulations, including 105 Code Mass. Regs. § 100.720(G), did in fact require such an analysis on the part of the department [342-343]; and that the department's denial of the two plaintiff imaging clinics' proposed location transfers under 105 Code Mass. Regs. § 100.720(I)(2) was supported by substantial evidence and was not arbitrary or capricious [343-344].

This court vacated that part of a Superior Court judgment that affirmed the Department of Public Health's (department's) denial of an imaging clinic's transfer request, where the department improperly declined to consider historic patient population data submitted in relation to its transfer request under 105 Code Mass. Regs. § 100.720(I)(1). [344]

Civil action commenced in the Superior Court Department on December 24, 2003.

The case was heard by *Geraldine S. Hines,* J., on motions for judgment on the pleadings and for summary judgment.

*Dustin F. Hecker* for the plaintiffs.

*Ronald F. Kehoe,* Assistant Attorney General, for the defendant.

Green, J. Following denial of their requests for approval to transfer the sites of their respective clinic operations, the plain-

---

[1]Greater Boston Magnetic Resonance Imaging Limited Partnership, and Western Massachusetts Magnetic Resonance Services, Inc.

tiffs filed a complaint in the Superior Court, challenging the authority of the Department of Public Health (department) to deny their requests. In a thoughtful and thorough memorandum of decision, a judge of the Superior Court denied the plaintiffs' motions for summary judgment and for judgment on the pleadings, and directed entry of judgment for the department. Applying well settled principles of statutory construction and administrative law, we agree that the department acted within its statutory and regulatory authority in denying the transfer requests of plaintiffs Greater Boston Magnetic Resonance Imaging Limited Partnership (Greater Boston) and Western Massachusetts Magnetic Resonance Services, Inc. (WMMRS),[2] under 105 Code Mass. Regs. § 100.720(I)(2) (2001), but that it improperly refused to consider historic patient population data submitted by WMMRS in relation to its transfer request under 105 Code Mass. Regs. § 100.720(I)(1) (2001). We accordingly affirm in part and reverse in part.

*Background.* Greater Boston[3] obtained licenses, based on a determination of need, from the department in 1988, 1989, and 2000 to provide magnetic resonance imaging (MRI) services from a mobile van in Brockton. WMMRS obtained licenses, also based on a determination of need, from the department in 1986, 1989, and 2000 to provide MRI services from a mobile unit shuttled between three hospitals in western Massachusetts.[4] Greater Boston maintained its mobile unit on land leased from Brockton Hospital, while WMMRS maintained its unit on land leased from Cooley Dickinson Hospital.

In 2002, Cooley Dickinson Hospital and Brockton Hospital sought, and obtained, permission from the department to purchase MRI equipment and provide MRI services under 105 Code Mass. Regs. § 100.308 (1994). That regulation allows for a discretionary and temporary exemption from the requirement, otherwise applicable to purchases of new MRI equipment and providing MRI services, to obtain a determination of need. See

---

[2]For convenience we shall refer to Greater Boston and WMMRS together in this opinion as the "clinics."

[3]MRI Associates, Inc., is the general partner of Greater Boston.

[4]The three hospitals, Cooley Dickinson Hospital (in Northampton), Franklin Medical Center (in Greenfield), and Wing Hospital (in Palmer), were joint licensees with WMMRS.

G. L. c. 111, § 25C; 105 Code Mass. Regs. §§ 100.000 et seq. Upon approval of their exemption requests, Cooley Dickinson Hospital and Brockton Hospital purchased MRI equipment, and began serving their patients' MRI needs directly. In addition, Cooley Dickinson Hospital, Franklin Medical Center, Wing Hospital, and Brockton Hospital terminated their respective lease arrangements with the clinics. The termination of the leases, and the establishment of MRI facilities within the hospitals whose patients the clinics formerly had served, posed a considerable challenge to the clinics' businesses. In response, the clinics sought permission under 105 Code Mass. Regs. § 100.720(I) (2001)[5] to move their facilities to fixed sites in Norton and Hadley, respectively. Neither town has clinical facilities providing MRI services. The clinics both requested approval under 105 Code Mass. Regs. § 100.720(I)(2); WMMRS also sought approval pursuant to 105 Code Mass. Regs. § 100.720(I)(1).

After notice and hearing, the department (through its commissioner and public health council) denied the clinics' transfer requests. In the case of Greater Boston, the department found that the proposed transfer failed to satisfy the requirement under § 100.720(I)(2) that it significantly increase access to service at

---

[5]Section 100.720(I) provides in relevant part:

"With respect to a facility duly licensed pursuant to M.G.L. c. 111, §§ 51 through 53 or M.G.L. c. 111B, §§ 6, 6A, or 6B, a request for a transfer of site under 100 CMR 100.720 shall be approved if the Department determines that no substantial change in service or substantial capital expenditure will result and one or the following applies:

"(1) The proposed transfer will not substantially change the population served by the facility, defined as the population residing in the cities and towns whose patients when ranked ordinally contribute cumulatively 75% of the facility's total discharges; provided that the transfer of site request shall not be approved if the proposed site of the transfer is a city or town that ranks higher on the 75% discharge list of another facility that provides the same services than it does on the 75% list of the facility proposing the transfer, unless there has been demonstration that the proposed transfer will not result in the duplication of services; or;

"(2) The proposed transfer will significantly increase access to the service for the population residing in cities and towns of the new site, and will not result in a corresponding decrease in access to the service at the original site."

the new site, without causing a corresponding decrease in access to service at the original site, because the two existing MRI units already in operation in the proposed service area have the capacity to serve the patient population that Greater Boston proposed to serve. In the case of WMMRS, the department found that the proposed transfer failed to satisfy the same requirement, because an existing fixed-site MRI unit already in operation in the proposed service area had the capacity to serve the patient population that WMMRS proposed to serve. In addition, as to WMMRS, the department found that the proposed site transfer would substantially change the population served, and thereby fail to satisfy the requirements of § 100.720(I)(1), as it would change the population served from WMMRS's service area in Chicopee to the proposed new location in Hadley.

The plaintiffs filed a complaint in the Superior Court, challenging the department's denials pursuant to G. L. c. 30A, § 14, and requested a declaratory judgment that the department's denials were in excess of its authority.[6] Following entry of judgment in the department's favor, the plaintiffs appealed.

*Discussion.* The plaintiffs challenge the department's actions on two distinct levels. First, they contend that the department is without statutory authority to deny, based on determination of need, a request to transfer a facility that does not provide ambulatory surgery.[7] Second, they contend that, even if the department has such statutory authority, the department's own regulations require approval of a transfer request in the clinics' circumstances. In response, the department contends that its regulations mandate a determination of need for the service in any transfer request, and that its regulations are within the delegated rulemaking authority established under the statutory framework.

We begin by reviewing the statutory scheme. "General Laws

---

[6]The plaintiffs also sought a declaration that the department may not consider exceptions pursuant to 105 Code Mass. Regs. § 100.308 in its determination whether to grant a transfer of site request. This count was dismissed by stipulation of the parties.

[7]General Laws c. 111, § 51, explicitly requires a determination of need analysis for the transfer of any facility that provides ambulatory surgery. Though the department's decisions reference that statute, for the reasons discussed below we agree with the judge that G. L. c. 111, § 25C, authorizes a determination of need analysis in the circumstances of the present case as well.

c. 111, § 25C, [the determination of need statute,] was enacted to 'prevent unnecessary expansion of health care facilities in the Commonwealth and encourage appropriate allocation of resources for health care purposes.' " *Commonwealth MRI Assocs., P.C.* v. *Commissioner of Pub. Health*, 419 Mass. 129, 130 (1994), quoting from *Commissioner of Pub. Health* v. *Bessie M. Burke Memorial Hosp.*, 366 Mass. 734, 735 (1975). Section 25F of chapter 111 directs the department to adopt such rules and regulations as it deems necessary for the implementation of § 25C. In reviewing the department's discharge of its responsibilities under § 25C, and its interpretation of the scope of its authority under that section, we are guided by "the well established principle that while an administrative or executive interpretation cannot bind the courts, weight should be given to any reasonable construction of a regulatory statute adopted by the agency charged with its enforcement. In enacting the determination of need statute, the Legislature intended the department to have a major role in 'defining the contours of the statute, and in considering its applicability on an ad hoc basis to projects that did not fit traditional norms.' " *Shoolman* v. *Health Facilities Appeals Bd.*, 404 Mass. 33, 37 (1989) (citation omitted), quoting from *Brookline* v. *Medical Area Serv. Corp.*, 8 Mass. App. Ct. 243, 254 (1979).

The plaintiffs' argument that the department is without authority to perform a needs analysis of their transfer requests would fundamentally undermine the purposes of the determination of need statute. It would derogate significantly from the purpose of the statute to encourage appropriate allocation of resources for health care purposes if, following licensure of a facility for service of a particular type in a particular location and based on a determination of need for that service in that location, the license holder were then free to transfer the facility to any other location, without regard to the need for service in either the new or former location. Particularly under the highly deferential standard of review we apply to the interpretation of a statute developed by the administrative agency charged with its enforcement, see *Falmouth* v. *Civil Serv. Commn.*, 447 Mass. 814, 821-822 (2006), we are not persuaded that the department acted

beyond its authority in adopting regulations requiring a needs analysis of any facility transfer request.[8]

The plaintiffs separately contend that, even if the department in theory has the statutory authority to adopt regulations which apply a needs analysis to transfer requests, the regulations the department in fact adopted do not have that effect. As the motion judge observed, however, the contention is simply incorrect: 105 Code Mass. Regs. § 100.720(G) (2001) expressly requires the department to conduct a needs analysis of any facility transfer request. Section 100.720(G) provides as follows:

> "Except as provided in 105 CMR 100.720(H) and 100.720(I), the Department shall grant a request for transfer of site or change in location *unless it finds that transfer of the project or facility to the site proposed would likely violate the objectives of the determination of need process stated at 105 CMR 100.532*. The Department may approve the request subject to reasonable conditions related to the proposed transfer of site or change in location" (emphasis added).

The plaintiffs suggest that the "except" phrase appearing at the beginning of § 100.720(G) excludes from the operation of that section any transfer request governed by 105 Code Mass. Regs. § 100.720(H) (2001) (which applies to any project ap-

---

[8]We also note that the department's rulemaking authority was subject to some degree of legislative oversight. Following the directive to promulgate regulations, G. L. c. 111, § 25F, contains the following proviso: "provided, however, that no new promulgated rule or regulation shall take effect before the thirtieth day next following the date which [*sic*] a copy of the rule or regulation shall have been filed with the joint committee on health care of the general court." G. L. c. 111, § 25F, inserted by St. 1977, c. 945, § 5. "The Legislature does not ordinarily display this level of interest in administrative regulations. The fact that the Legislature has done so here strongly indicates that it anticipates that the regulations will be substantive, and wishes to be in a position quickly to alter anything it deems inconsistent with desirable regulatory policy regarding the subject matter." *Postal Community Credit Union* v. *Commissioner of Banks*, 61 Mass. App. Ct. 563, 571-572 (2004). That the Legislature did not act to challenge the department's regulations lends weight to the conclusion that the department acted within its delegated authority in promulgating them. See *ibid.* See also *Carleton* v. *Commonwealth*, 447 Mass. 791, 804, 808-810 & n.26 (2006); *Pulsone* v. *Public Employee Retirement Admin. Commn.*, 60 Mass. App. Ct. 791, 796-797 (2004).

proved but not yet licensed or in operation) or § 100.720(I) (which applies to any licensed facility). We agree, however, with the department that § 100.720(G) is more reasonably construed to articulate the general principles and objectives applicable to all transfer requests, and that the "except" phrase merely refers to the more specific conditions to be considered in addition in the case of unlicensed and licensed facilities, respectively.[9]

Moreover, considered in the context of the over-all statutory purposes and objectives, we think it reasonable and permissible for the department to construe the requirement, under § 100.720(I)(2), that any transfer "significantly increase access to the service for the population residing in cities and towns of the new site, and . . . not result in a corresponding decrease in access to the service at the original site," in a manner consistent with the determination of need analysis performed incident to original licensure. As we have previously observed, a contrary conclusion would derogate from the purposes of G. L. c. 111, § 25F, by allowing services approved and licensed based on a determination of need for the service at a particular location to relocate without regard to the need for the service at the proposed new location, or any adverse impact on services available at the originally approved location.

Having established the department's statutory authority to adopt regulations applying a needs analysis to transfer requests, and that its regulations carry out that authority, we are satisfied

---

[9] The plaintiffs' proffered interpretation would render § 100.720(G) superfluous, since its provisions would apply independently to no class of facilities. Following oral argument before this court, the plaintiffs submitted a letter pursuant to Mass.R.A.P. 16(l), as amended, 386 Mass. 1247 (1982), in which they suggested that § 100.720(H) and § 100.720(I) applied only where no "substantial change in service" or "substantial capital expenditure" is involved, leaving open the possibility that § 100.720(G) would hold independent force with respect to transfer requests in which either a substantial change in service or a substantial capital expenditure is involved. However, the references in the two sections to a substantial change in service or a substantial capital expenditure do not define the scope of coverage of each section, but instead establish the conditions required for approval of a request falling within the scope of each section. As the scope of the two sections, taken together, is comprehensive (in that one covers unlicensed facilities and the other covers licensed facilities), the plaintiffs' suggestion that § 100.720(G) does not apply to requests under either section, and applies only to requests to which neither section applies, is unpersuasive.

that the department's denial of the clinics' proposed transfers under § 100.720(I)(2) was supported by substantial evidence and was not arbitrary or capricious. The administrative record supports the department's conclusion that the proposed new locations would overlap with services offered by other extant facilities, and would accordingly provide no substantial increase in service to any unserved population.

As to the separate request by WMMRS under § 100.720(I)(1), however, we conclude that the department's decision must be vacated. In considering WMMRS's request, the department treated its service area as Chicopee, the location of another fixed-site MRI clinic operated by WMMRS. However, WMMRS proposed to transfer its former Northampton facility, and not its Chicopee facility, and was entitled to have its transfer request considered on the basis of the historical patient data it submitted from its Northampton operations. Because the department did not conduct an analysis of WMMRS's transfer request under § 100.720(I)(1) with reference to the Northampton facility that was the subject of WMMRS's transfer request, we vacate that portion of the judgment and direct that the judgment be modified to remand the matter to the department for further proceedings on WMMRS's request under § 100.720(I)(1).

*Conclusion.* So much of the judgment as affirms the department's decisions to deny the clinics' transfer requests pursuant to § 100.720(I)(2) is affirmed. So much of the judgment as affirms the department's decision to deny WMMRS's transfer request pursuant to § 100.720(I)(1) is vacated, and the judgment shall be modified to remand the matter to the department for further proceedings on WMMRS's transfer request under § 100.720(I)(1) consistent with this opinion.

*So ordered.*