JAMES McLAUGHLIN *vs.* CITY OF LOWELL.

No. 11-P-2072.

Middlesex. February 7, 2013. - July 25, 2013.

Present: CYPHER, KANTROWITZ, & FECTEAU, JJ.

*Fire Fighter,* Retirement, Incapacity. *Municipal Corporations,* Fire department, Retirement board. *Public Employment,* Accidental disability retirement, Reinstatement of personnel. *Public Employee Retirement Administration Commission. Division of Administrative Law Appeals. Contributory Retirement Appeal Board. Administrative Law,* Judicial review. *Collateral Estoppel. Practice, Civil,* Summary judgment, Judgment notwithstanding verdict. *Employment,* Discrimination. *Anti-Discrimination Law,* Employment, Handicap.

In a civil action arising from the claim of the plaintiff, a fire department captain who had been granted accidental disability retirement, seeking reinstatement under G. L. c. 32, § 8(2), a Superior Court judge properly granted summary judgment in favor of the defendant city, where the doctrine of collateral estoppel precluded relitigation of an issue that had been determined in decisions of administrative tribunals from which the plaintiff failed to perfect his appeal, i.e., whether, in light of a fire department rule prohibiting the use of an asthma inhaler at a fire scene, the plaintiff was unable to perform the essential duties of a captain. [51-59]

In a civil action arising from the reinstatement claim of the plaintiff, a disability retiree, alleging employment discrimination on the basis of handicap, G. L. c. 151B, § 4(16), and on the basis of interference with his protected rights, G. L. c. 151B, § 4(4A), the Superior Court judge erred in denying the defendant city's motion for judgment notwithstanding the verdict, where, given that the statutory scheme governing the reinstatement of a disability retiree operates to replace the fact-finding function of either judge or jury on the issue whether the disability retiree is a qualified handicapped person under the antidiscrimination statute, and that issue had been fully and finally litigated before administrative tribunals (from the decisions of which no appeal had been perfected), the plaintiff had no reasonable expectation of proving a prima facie case for handicap discrimination [59-71]; and where the plaintiff's failure to demonstrate that the city subjected him to unlawful discrimination on the basis of his handicap effectively precluded him from proving that the city interfered with his protected rights under G. L. c. 151B [71-74].

CIVIL ACTION commenced in the Superior Court Department on May 24, 2004.

Motions for summary judgment were heard by *Joseph M. Walker, III*, J., and the case was tried before him.

*Betsy L. Ehrenberg (Alfred Gordon* with her) for the plaintiff.

*Kimberley A. McMahon*, Assistant City Solicitor, for the defendant.

FECTEAU, J. The plaintiff, James McLaughlin, and the defendant, city of Lowell (city), each appeal from orders and judgments of a judge of the Superior Court. McLaughlin, a former fire department captain retired on a disability pension, sought restoration to service. He appeals the entry of summary judgment in favor of the city with respect to his reinstatement claim under G. L. c. 32, § 8(2). Having successfully brought handicap discrimination and interference claims, however, which resulted in jury verdicts in his favor, McLaughlin avers that the trial judge improperly eviscerated the remedial scheme of G. L. c. 151B and arbitrarily reduced the amount of his attorney's fees and costs.[1]

On the other hand, the city contends that the Superior Court lacked jurisdiction over McLaughlin's discrimination claims and erroneously allowed McLaughlin to relitigate matters already decided before the Division of Administrative Law Appeals (DALA) and the Contributory Retirement Appeal Board (CRAB). The city additionally argues that McLaughlin did not prove a prima facie case of handicap discrimination or interference and, further, that the judge erred in giving certain jury instructions.[2] We affirm in part and reverse in part.

1. *Background.* McLaughlin began working as a firefighter with the Lowell fire department (LFD) in 1974, ultimately attaining the rank of captain. On July 8, 1996, McLaughlin suf-

---

[1]McLaughlin sought damages and injunctive relief in the Superior Court against the city and Lowell fire Chief William Desrosiers, alleging (1) violations of G. L. c. 32, § 8 (relating to reinstatement and retraining) (Counts I and II), (2) violations of G. L. c. 151B, § 4(16), 4(4A), and 4(5) (relating to handicap discrimination and interference with protected rights) (Counts III and IV), and (3) intentional interference with contractual relations (Count V). McLaughlin also sought declaratory relief in connection with the city's failure to reinstate him (Count VI). By a "Stipulation of Dismissal," all claims stated against Desrosiers were dismissed. Accordingly, Counts I through IV proceeded solely against the city. Count V was dismissed in its entirety.

[2]In light of our disposition, we need not decide whether the jury instructions were proper.

fered an asthma attack after responding to a small outdoor mulch fire without wearing protective gear. Thereafter, McLaughlin applied for and was granted accidental disability retirement under G. L. c. 32, § 7, effective February 1, 1997. Since retiring, McLaughlin has not suffered another asthma attack, despite regular exercise and his ceasing the use of any asthma medication. In late 2000, with the support of his pulmonologist, Dr. Joseph Walek, McLaughlin sought reinstatement to his former position as captain with the LFD, pursuant to G. L. c. 32, § 8.[3]

2. *Procedural history.* In connection with McLaughlin's application for reinstatement, a three-member medical panel was designated and convened under the authority of the Public Employee Retirement Administration Commission (PERAC) pursuant to G. L. c. 32, § 8(1)(*b*). The medical panel, consisting of Dr. Dean Hashimoto, Dr. Ronald Dorris, and Dr. Donald Kaplan, examined McLaughlin separately on dates in September and December of 2001. Thereafter, each physician certified that McLaughlin could perform the essential functions of the position. By notice dated December 4, 2001, PERAC then instructed the Lowell retirement board (LRB) to advise the city to reinstate McLaughlin to service. However, on review of the narratives of the medical panelists, the LRB forwarded to PERAC a request for clarification by letter dated January 2, 2002, indicating that it was unclear whether the medical panelists properly reviewed the job descriptions for a fire fighter and captain, as opposed to a fire chief, and whether "the use of inhalers in any way limit[ed McLaughlin's] functions as a fire fighter." See 840 Code Mass. Regs. § 10.11(2) (2008).[4] All three physicians reaffirmed their opinions (second medical panel). On January 17, 2002, PERAC so notified the LRB, and accordingly, on January 25, 2002, the LRB directed the city to reinstate McLaughlin as captain. At that time, there were no immediate vacancies for that position.[5]

Thereafter, the city obtained and reviewed McLaughlin's PERAC file, apparently with McLaughlin's permission. On

---

[3]The relevant portion of G. L. c. 32, § 8, is set forth in part 3.a, *infra.*

[4]The LRB also enclosed a list of "Fire Fighter Essential Tasks."

[5]The city had filled two vacant captain positions earlier that month. According to record evidence, two appointments had been made by an "Authorization of Employment Form" dated January 4, 2002, with effective employment dates of January 5, 2002, and January 27, 2002. See note 22, *infra.*

May 14, 2002, the city petitioned PERAC to seek further clarification from the medical panel, opining "that the doctors d[id] not fully understand the job duties of a fire fighter, or the hazards that Mr. McLaughlin will encounter when fighting fires."[6] In connection with its request, the city enumerated seven concerns, including the permanence of McLaughlin's asthma diagnosis and that McLaughlin is absolutely prohibited from using an inhaler or taking any medication while fighting a fire.[7] On June 7, 2002, PERAC denied the city's request for further clarification, and the city sought administrative review of the denial with DALA in accordance with G. L. c. 32, § 16(4). Following a hearing, in a decision dated July 22, 2003, the DALA magistrate ordered PERAC to remand the matter to the medical panel "for clarification concerning both Mr. McLaughlin's duties as a Fire Captain as well as the impact, if any, the departmental prohibition against the use of inhalers at fire scenes has on his ability to perform the essential duties of his position."[8] PERAC appealed DALA's decision to CRAB pursuant to G. L. c. 32, § 16(4). CRAB, by a decision dated March 31, 2004, adopted the DALA magistrate's twenty-two findings of fact and affirmed the DALA magistrate's decision; CRAB similarly ordered "PERAC to request clarification from the medical panel as to whether" each panelist's decision regarding McLaughlin's ability to perform the essential duties of his position would change in light of the following facts: (1) "a Fire Cap-

---

[6]In the city's letter to PERAC, it stated: "It appears that the medical panel doctors have not been informed that Mr. McLaughlin absolutely cannot use an inhaler when he is fighting a fire. He cannot remove his face mask when he is in a smoky area; doing so would place Mr. McLaughlin and the citizens of Lowell at a substantial risk of injury."

[7]The city appeared to take issue with the following statements contained in the second medical panel's clarification reports: McLaughlin's asthma "is under control using a properly prescribed medication" (Dr. Kaplan); McLaughlin's "use of inhalers does not limit his functions as a firefighter" (Dr. Dorris); McLaughlin "has not used inhalers in the past several years" (Dr. Hashimoto).

[8]The DALA magistrate explicitly credited the testimony of LFD fire Chief William Desrosiers "to the effect that Fire Captains in the [LFD] were required to respond to all working fires and to assist in all fire fighting duties at those fires" and "that the use of inhalers was strictly prohibited at fire scenes." Therefore, based on Desrosiers's testimony, the DALA magistrate concluded that the second medical panel relied on erroneous information in determining that McLaughlin was able to perform the essential duties of captain. See note 7, *supra.*

tain is required to report to all working fires and to assist in all aspects of fire suppression"; and (2) "the use of inhalers at a fire scene is strictly prohibited."[9]

Pursuant to the orders of the administrative tribunals, PERAC requested clarification from the medical panel on June 8, 2004.[10] Upon reconsideration, neither Dr. Hashimoto nor Dr. Dorris changed their opinions; however, Dr. Kaplan concluded to the contrary, specifically stating: "McLaughlin may very well suffer from bronchospasm when exposed to fumes at a fire and would require the use of an inhaler. Accordingly, he must be considered unable to fulfill the essential duties of his position." Thus, the third medical panel's decision was not unanimous. See 840 Code Mass. Regs. § 10.13(2)(b) (2002).[11]

On May 24, 2004, McLaughlin filed suit against the city in Superior Court. McLaughlin amended his complaint on February 9, 2006, to include the third medical panel's decision, which had been pending at the time the original complaint was filed. After the trial judge disposed of numerous motions in limine, the parties filed cross-motions for summary judgment with respect to McLaughlin's claims under G. L. c. 32, § 8, which

[9]CRAB's decision stated: "Two of the three medical panel members, Drs. Hashimoto and Kaplan, appear to rely, at least in part, on a conclusion that Mr. McLaughlin's asthma is controlled through the use of steroidal inhalers. . . . This board also finds that the [LFD] prohibits the use of inhalers at a fire scene. . . . Given these facts and the implications for the safety of the public generally, for other firefighters working with Mr. McLaughlin and for Mr. McLaughlin himself, of the determination as to whether Mr. McLaughlin is able to perform safely the essential duties of his position, it was arbitrary and capricious for PERAC to refuse [to] provide this information to the medical panel and to determine whether the information would affect the Panel's determination of Mr. McLaughlin's ability to perform the essential duties of his position."

[10]A vacancy — apparently the first since January 4, 2002 — occurred on or about June 11, 2004, and was filled by another LFD employee, effective June 27, 2004. See note 5, *supra*.

[11]Title 804 Code Mass. Regs. § 10.13(2)(b) provides: "If after two years from the date of retirement a medical panel *unanimously* determines that the disability retiree is qualified for and able to perform the essential duties of the position from which he or she retired or a similar position within the same department, as determined by the State Human Resources Division, the member shall be returned to said position, provided the position is vacant. . . . If no vacancy exists, the member shall be granted a preference for the next available position or similar position for which he is so qualified." (Emphasis supplied).

alleged that the city failed to reinstate him as captain and that the city imposed an unlawful retraining program as a condition of reinstatement. On November 29, 2010, the trial judge allowed the city's motion for summary judgment, concluding that Dr. Kaplan's assessment that McLaughlin was unable to perform the duties of captain was "valid, supported by the record, and not based on any unlawful or discriminatory considerations."[12] Consequently, the trial judge concluded, McLaughlin had no right to reinstatement because the third medical panel's decision lacked the unanimity required by 840 Code Mass. Regs. § 10.13(2)(b).[13]

McLaughlin's claims under G. L. c. 151B proceeded to trial by jury in December, 2010. On December 13, 2010, the jury found for McLaughlin on all remaining counts, including that McLaughlin was a handicapped person qualified to perform the essential duties of a captain and that the city intentionally interfered with McLaughlin's protected rights, and awarded $350,000 in damages. The trial judge entered judgment on the jury verdict on December 15, 2010, ordering that McLaughlin recover $350,000 plus interest, together with costs. On April 28, 2011, the trial judge allowed McLaughlin's posttrial motion for reasonable attorney's fees and costs and the city's motion for a

---

[12]The trial judge noted: "While the court agrees with McLaughlin that the mere use of an inhaler does not violate the [LFD] Rules and Regulations, Dr. Kaplan's decision is not erroneous on that ground. Under sections 9(40) and 9(40A) of the [LFD] Rules and Regulations, and as a practical matter, firefighters must respond to the fire wearing appropriate gear, including having 'masks in proper position to enable them to immediately enter any smoke filled area.' Whether explicitly prohibited or not, a firefighter would have grave difficulty using an inhaler when surrounded by smoke. It would also be a challenge for a firefighter to attempt to escape a smokey [sic] area while in the midst of an asthma attack and, to the extent such firefighter would require assistance, it would divert much needed resources away from fire suppression efforts. Additionally, Lowell firefighters are generally prohibited from leaving the fire scene (see § 9[20]), which, depending on the nature of the fire, might also make it difficult for a firefighter to escape the smoke in order to use an inhaler. Under these circumstances, it is the firefighter's fitness to engage in fire suppression activities, rather than the use of the inhaler itself, that bears on the firefighter's ability to perform the essential duties of the position."

[13]McLaughlin does not appeal from the entry of summary judgment with respect to the city's alleged unlawful retraining program, which required yet another medical evaluation as a condition of McLaughlin's reinstatement; this claim was rendered moot by the fact that McLaughlin did not first establish a right to reinstatement.

remittitur of the damages award, which McLaughlin accepted. The trial judge denied the city's motions for judgment notwithstanding the verdict and for a new trial. On April 29, 2011, the trial judge issued an amended judgment, ordering that McLaughlin recover $200,000 plus interest, together with costs of $15,000 and attorney's fees of $235,000. The city filed its notice of appeal on May 27, 2011, and McLaughlin filed his notice of cross-appeal on June 8, 2011.

3. *Discussion.* a. *Reinstatement claims.* McLaughlin avers that the trial judge erred in granting summary judgment for the city by engaging in fact-finding on issues that McLaughlin had disputed at that juncture. Specifically, McLaughlin contends that record evidence, including admissions by the city, demonstrated that the use of an inhaler at a fire scene was neither impossible nor impermissible and, as such, the trial judge's findings to the contrary were improper. McLaughlin further argues that the trial judge erred in denying his motion for summary judgment based on the first medical panel's December, 2001, unanimous determination that he was able to perform the duties of a captain.

i. *Standard of review.* "On appellate review of a judge's decision on cross motions for summary judgment, we view the record in the light most favorable to the party against whom the judge allowed summary judgment, here [McLaughlin]," *Marhefka* v. *Zoning Bd. of Appeals of Sutton*, 79 Mass. App. Ct. 515, 516 (2011), to determine whether "all material facts have been established and [the city] is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). "When reviewing a grant of summary judgment we consider the pleadings, depositions, answers to interrogatories, and responses to requests for admission under Mass. R.Civ.P. 36, 365 Mass. 795 (1974), together with the affidavits, and ask if there is any genuine issue as to any material fact." *Federal Natl. Mort. Assn.* v. *Hendricks*, 463 Mass. 635, 637 (2012).

ii. *G. L. c. 32, § 8.* General Laws c. 32, § 8(2)(*a*), as appearing in St. 1998, c. 252, § 2, provides in relevant part:

"If, after two years of the date that a member is retired

under section . . . 7 [relating to accidental disability], the regional medical panel determines that the retired member is qualified for and able to perform the essential duties of the position from which he retired . . . , said member shall be returned to said position, provided the position is vacant."

In short, "G. L. c. 32, § 8(2), compels reinstatement of retired employees once properly cleared by the retirement board, and a vacancy exists." *Sullivan* v. *Brookline*, 435 Mass. 353, 354 (2001). Although G. L. c. 32, § 8(2), is silent on the nature of the medical panel's determination with respect to the disability retiree's ability to perform essential job functions, a regulation promulgated by PERAC in 2000 permissibly imposes a requirement for unanimous panel action. See 804 Code Mass. Regs. § 10.13(2)(b) (set forth at note 11, *supra*); *Pulsone* v. *Public Employee Retirement Admin. Commn.*, 60 Mass. App. Ct. 791, 796 (2004). Moreover, on review of a medical panel's report, the retirement board is entitled to request from the medical panel "additional information" or "further clarification" if the retirement board determines that the request is necessary. 840 Code Mass. Regs. § 10.11(2) (2008).[14]

On the facts before us, the medical panel unanimously determined that McLaughlin was able to perform the essential functions of captain in December, 2001, and again in January, 2002, following the LRB's request for clarification. It was not until after the city's second request for clarification in May, 2002 — which, inter alia, articulated a categorical prohibition on McLaughlin's use of inhaler or any other medication while actively engaged in fighting a fire and inquired whether, if so informed, the panel had a change of opinion in response thereto — that Dr. Kaplan ultimately determined that McLaughlin was unable to perform the essential duties of a captain, thereby disrupting

---

[14]Title 840 Code Mass. Regs. § 10.11(2) provides: "If upon review of a medical panel report by the retirement board, or in the case of separate examinations, any individual report, *the retirement board determines that additional information or further clarification is needed from the medical panel, the board shall request such information from the medical panel and shall provide a copy of such request to the [PERAC].* At the request of the retirement board, the [PERAC] shall assist the retirement board in obtaining whatever information is deemed necessary." (Emphasis supplied).

the unanimity of the medical panel's two prior determinations.[15] McLaughlin urges, however, that Dr. Kaplan's third decision was deficient, and thus should be regarded as a nullity because he impermissibly relied on an LFD rule allegedly fabricated by the city in order to intentionally delay McLaughlin's restoration to service.

Specifically, McLaughlin contends that he properly disputed whether a fire fighter would be able to use an inhaler at a fire scene and whether any rule, regulation, or order from the LFD prohibited a fire fighter from doing so. In support, McLaughlin cites to that portion of the "Consolidated Statements of Facts and Responses Thereto," which included reference to Lowell fire Chief William Desrosiers's deposition, and provided that fire fighters routinely exit a fire scene every twenty to thirty minutes to switch their oxygen tanks and remove their breathing apparatuses. While the city, in response, noted that fire fighters wear fresh air — not oxygen — tanks while combating active fires, it did not dispute that fire fighters routinely exit a fire scene every twenty to thirty minutes in order to switch their empty fresh air tanks. Given this agreed fact, McLaughlin's argument that this evidence raises a genuine issue of material fact with respect to the city's repeated assertions that "the performance of [McLaughlin's] duties as a firefighter would prevent him from using an inhaler at a fire scene because he cannot remove a face mask while fighting a fire in a smoky area" has surface appeal, unless otherwise precluded. The LFD is not heard to dispute that McLaughlin could use an inhaler during a tank change away from the active fire fighting activities. Moreover, McLaughlin does not genuinely dispute the fact that he would not be allowed to remove his mask when actively engaged in fighting a fire, nor that the circumstances of the fire suppression activities might

---

[15]The LRB appears to be an independent and autonomous entity from the city. *Everett Retirement Bd.* v. *Assessors of Everett*, 19 Mass. App. Ct. 305, 308 (1985) ("a retirement board established under G. L. c. 32 is independent of the city or town whose employees it serves"). Although the issue is not properly before us, we note that while 840 Code Mass. Regs. § 10.11(2) entitles the LRB to request further clarification from the medical panel, it does not appear that the city is entitled to do the same. However, as discussed *infra*, McLaughlin did not seek judicial review within thirty days after his receipt of notice of CRAB's March 31, 2004, decision ordering PERAC to seek further clarification from the medical panel, as requested by the city.

prevent him from being able to exit at will. Nonetheless, we determine that McLaughlin is precluded from relitigating the issue.

iii. *Collateral estoppel.* To evaluate the validity of Dr. Kaplan's determination that McLaughlin is unable to perform the essential functions of a captain, we must revisit the decisions rendered by both the DALA magistrate and CRAB; we note, however, that McLaughlin never appealed from CRAB's ultimate determination. In July, 2003, the DALA magistrate reversed PERAC's decision denying the city's request for further clarification from the medical panel.[16] Thereafter, McLaughlin appealed the decision of the DALA magistrate to CRAB, which adopted the DALA magistrate's findings of fact in full, explicitly stating: "This board also finds that the [LFD] prohibits the use of inhalers at a fire scene." CRAB then remanded the matter to PERAC, ordering PERAC to request that the medical panel reconsider its opinion that McLaughlin could perform the essential duties of a captain specifically in light of the departmental prohibition on inhalers. Although G. L. c. 30A, § 14, affords any person aggrieved by a final decision of an agency in an adjudicatory proceeding a judicial review thereof, McLaughlin did not seek judicial review within thirty days after his receipt of notice of CRAB's March 31, 2004, decision. See *Retirement Bd. of Salem* v. *Contributory Retirement Appeal Bd.*, 453 Mass. 286, 288-289 (2009) (discussing judicial review of CRAB decisions).

Instead, McLaughlin filed suit in Superior Court on May 24, 2004, seeking, as here relevant, a judgment declaring that he is fit to return to work and certain injunctive relief. A judge of the Superior Court (dismissal judge) dismissed McLaughlin's reinstatement claims without prejudice.[17] After the third medical panel rendered its divided decision upon reconsideration, which

---

[16]In her written decision, the DALA magistrate found as follows, based on Desrosiers's testimony: "Pursuant to standard operating practice of the [LFD], the use of inhalers at a fire scene is strictly prohibited."

[17]As noted by the dismissal judge, McLaughlin "[was] not appealing CRAB's decision, nor a decision of a medical panel, but rather the city's refusal to reinstate him." When McLaughlin filed his complaint, however, the third medical panel had not yet rendered its decision, and accordingly, the city's purported reason for refusing to reinstate McLaughlin was, at that time, nonexistent.

resulted in the city's refusal to reinstate McLaughlin, McLaughlin amended his complaint, which survived the city's motion to dismiss.[18]

Consequently, while it is clear that McLaughlin challenged the validity of the third medical panel's decision, he challenged neither CRAB's decision ordering reconsideration of the second medical panel's decision nor the facts on which the third medical panel's decision was based. Nevertheless, McLaughlin alleged the following facts for the first time in his amended complaint:

> "41. On or about June 8, 2004, PERAC provided Drs. Dorris, Kaplan, and Hashimoto ('the doctors') with a memorandum *falsely asserting that [the city] maintained a policy prohibiting the use of inhalers at a fire.*
>
> "42. Based upon this *false assertion*, the doctors were asked if their opinions of McLaughlin's ability to perform the essential duties of his position would change.
>
> " . . .
>
> "54. *[The city] falsely asserted that it had a policy against the use of inhalers at a fire and improperly demanded another clarification based upon this alleged 'fact.'*
>
> "55. *Based upon [the city's] false assertion of a policy against the use of inhalers at a fire*, the third medical panel did not clear McLaughlin for reinstatement."

(Emphasis supplied).

On appeal, the city argues that McLaughlin's allegations that the city falsely asserted that it had a policy against the use of inhalers was an issue fully and finally litigated before DALA

---

[18]The dismissal judge also denied the city's motion to dismiss the amended complaint, stating:

> "When McLaughlin filed his original complaint, the third Regional Medical Panel had not yet rendered its decision. Therefore, it was impossible for McLaughlin to appeal an adverse decision of the panel because the panel had not yet refused to reinstate him. Now, however, the Regional Medical Panel has refused to reinstate him and McLaughlin has appropriately appealed the validity of the third Regional Medical Panel's decision."

and CRAB. According to the city, DALA's determination, adopted by CRAB, that "the use of inhalers at a fire scene is strictly prohibited" must be given preclusive effect. We agree.[19]

"The judicial doctrine of collateral estoppel provides that '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.' " *Alba* v. *Raytheon Co.*, 441 Mass. 836, 841 (2004), quoting from *Martin* v. *Ring*, 401 Mass. 59, 61 (1987). "The doctrine may be applied with respect to administrative agency determinations so long as the tribunal rendering judgment has the legal authority to adjudicate the dispute." *Alba* v. *Raytheon Co.*, *supra*. "The guiding principle in determining whether to allow defensive use of collateral estoppel is whether the party against whom it is asserted 'lacked full and fair opportunity to litigate the issue in the first action or [whether] other circumstances justify affording him an opportunity to relitigate the issue.' " *Martin* v. *Ring*, *supra* at 62, quoting from *Fidler* v. *E.M. Parker Co.*, 394 Mass. 534, 541 (1985).

It is well established that "[a] party is precluded from relitigating an issue when:

> (1) there was a final judgment on the merits in [a] prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication is identical to the issue in the current litigation; and (4) the issue decided in the prior adjudication was essential to the earlier judgment."

*Porio* v. *Department of Rev.*, 80 Mass. App. Ct. 57, 61-62 (2011), quoting from *Green* v. *Brookline*, 53 Mass. App. Ct. 120, 123 (2001).

---

[19]The doctrine of collateral estoppel aids our assessment of the trial judge's grant of summary judgment in favor of the city, albeit "for slightly different reasons than those of the judge below." *Okoli* v. *Okoli (No. 2)*, 81 Mass. App. Ct. 381, 384 (2012). "[O]n appeal [an appellate court] may consider any ground apparent on the record that supports the result reached in the lower court." *Id.* at 384-385, quoting from *Commonwealth* v. *Levesque*, 436 Mass. 443, 455 (2002).

The first two factors are easily met. First, the administrative tribunals determined, on the merits, the propriety of PERAC's refusal to seek a second clarification from the medical panel at the city's request. This review required the tribunals to assess whether the first and second medical panels had relied on erroneous or incomplete information in arriving at their conclusions concerning McLaughlin's ability to perform the essential duties of a captain, because, in order for the medical panel to properly perform its function, it must fully comprehend the duties of the position to which the retiree is seeking reinstatement. McLaughlin's contention that the administrative decisions addressed a limited procedural matter, therefore, misses the mark. Furthermore, this decision became final when McLaughlin failed to perfect his appeal of CRAB's determination pursuant to G. L. c. 30A, § 14.[20] See, e.g., *Alba* v. *Raytheon Co.*, *supra* at 838. Second, despite his urgings to the contrary, McLaughlin was a party in the prior case. McLaughlin, pro se, intervened and testified in the DALA proceeding. See *Frostar Corp.* v. *Malloy*, 77 Mass. App. Ct. 705, 713 (2010) (noting that "an intervener may litigate fully" and that "the interven[e]r is treated as if the interven[e]r were an original party" [citations omitted]). Additionally, McLaughlin, by his attorneys, submitted written objections to CRAB.[21]

We must next "consider whether the findings made by [CRAB]

---

[20]We recognize that, ordinarily, an agency order remanding a matter to a subordinate agency is not considered a final decision. See *East Longmeadow* v. *State Advisory Commn.*, 17 Mass. App. Ct. 939, 940 (1983). However, where the order gives the subordinate agency no discretion, but instead requires that it resolve the matter in the manner specified, the order is final and appealable. See *Politano* v. *Selectmen of Nahant*, 12 Mass. App. Ct. 738, 740 (1981). See also *Lankheim* v. *Board of Registration in Nursing*, 454 Mass. 1013, 1014 (2009). CRAB's March 31, 2004, decision resolves the issue of the prohibition against the use of inhalers at a fire scene, and left nothing more for PERAC to do but to submit CRAB's resolution of that issue to the medical panel.

[21]To the extent that McLaughlin contends otherwise, we conclude that the issue of the essential functions of a captain, as here relevant, has been "actually litigated" before the tribunals below. See, e.g., *Treglia* v. *MacDonald*, 430 Mass. 237, 241 (1999). An issue has been actually litigated in a prior action where "the issue was subject to an adversary presentation and consequent judgment that was not a product of the parties' consent." *Jarosz* v. *Palmer*, 436 Mass. 526, 531 (2002) (quotations omitted). It does not require an evidentiary hearing or a trial; an issue may be considered to be actually litigated for

were identical to the issues raised in the Superior Court, and if so, whether those findings were essential, or treated as essential, to [CRAB's] order." *Alba* v. *Raytheon Co.*, 441 Mass. at 842. The DALA magistrate made a subsidiary finding, adopted by CRAB, that the LFD strictly prohibits the use of inhalers at a fire scene in support of her decision that the first and second medical panels relied on erroneous information in determining McLaughlin's ability to perform essential duties of a captain, thus justifying the city's request for further clarification. See *Green* v. *Brookline*, 53 Mass. App. Ct. at 125-126 (subsidiary findings given preclusive effect). In the Superior Court, McLaughlin alleged that the LFD does not prohibit the use of inhalers and on appeal, he contends that he properly disputed the existence of that very rule, thereby rendering the trial judge's grant of summary judgment in favor of the city erroneous. For the purposes of preclusion, the issue resolved by the DALA magistrate and CRAB is identical to the issue raised by McLaughlin in the Superior Court.

Last, whether the LFD prohibited the use of an inhaler at the fire scene was essential to the findings of the DALA magistrate and CRAB, who considered numerous exhibits and heard the testimony of both Desrosiers and McLaughlin. See *Supeno* v. *Equity Office Properties Mgmt., LLC*, 70 Mass. App. Ct. 470, 474-475 (2007). Without first assessing the existence of the LFD's purported rule, the administrative tribunals could not ascertain whether the first and second medical panels had relied on erroneous information in arriving at their conclusions and ultimately, whether remand to the medical panel was necessary. CRAB ordered PERAC to request clarification from the medical panel as to whether the fact that the city strictly prohibits

the purposes of collateral estoppel even where it is decided only on documentary submission and arguments of the parties. *Ibid.* With respect to the issue here, both McLaughlin and Desrosiers testified before DALA. Moreover, McLaughlin submitted written objections to CRAB, challenging two findings of fact made by the DALA magistrate, specifically, that a captain is required to wear a self-contained breathing apparatus while fighting fires, which he is not permitted to remove until proper ventilation of the fire scene has been achieved, and that the use of inhalers at a fire scene is strictly prohibited. CRAB considered the objections lodged, but ultimately determined that the LFD prohibits the use of inhalers at a fire scene. Accordingly, the adversary proceeding afforded McLaughlin is sufficient to constitute actual litigation. *Id.* at 531-532.

the use of an inhaler at a fire scene changes its opinion as to McLaughlin's ability to perform the essential duties of his position. That order reflects that CRAB's findings with respect to that prohibition were "the product of full litigation and careful decision," *Green* v. *Brookline, supra* at 126-127, quoting from *Commissioner of the Dept. of Employment & Training* v. *Dugan*, 428 Mass. 138, 144 (1998), and, therefore, should be treated as essential to CRAB's ultimate determination. *Alba* v. *Raytheon Co., supra* at 844. Contrast *Porio* v. *Department of Rev.*, 80 Mass. App. Ct. at 62 (plaintiff, who had been discharged by the department due to alleged budgetary concerns, was not precluded from pursuing age discrimination claim based on prior civil service appeal where the first action turned on job titles and seniority rights, the resolution of which concerned neither the legitimacy nor the motives underlying the department's cited concerns at issue in the subsequent action).

Here, all of the elements for applying collateral estoppel were met, and as such, a genuine issue of material fact did not exist with respect to the LFD's procedure. Dr. Kaplan hence based his decision on valid information concerning the essential duties of a captain, and the third medical panel did not unanimously opine that McLaughlin was able to perform the essential duties of a captain. Therefore, as matter of law, McLaughlin was not entitled to reinstatement. For the aforementioned reasons, the trial judge properly granted summary judgment for the city.[22]

b. *Discrimination claims.* Following a seven-day trial, the

---

[22]McLaughlin's contention that the trial judge erred in denying his motion for summary judgment where the medical panel unanimously found him fit to resume employment in December, 2001, and the uncontroverted record established that the city filled not one but two vacant fire captain positions in January, 2002 — one on January 5 and one on January 27 — is without merit.

Here, the LRB's request for clarification on January 2, 2002, is not tantamount to a refusal to reinstate McLaughlin nor an improper exercise of discretionary authority. Contrast *White* v. *Boston*, 428 Mass. 250, 252-254 (1998); *O'Neill* v. *City Manager of Cambridge*, 428 Mass. 257, 258-259 (1998). Instead, this court has recognized the general importance of a retirement board's right to seek supplemental clarification from the medical panel pursuant to 804 Code Mass. Regs. § 10.11(2), which cannot be exercised until after the medical panel has already rendered its decision. *Narducci* v. *Contributory Retirement Appeal Bd.*, 68 Mass. App. Ct. 127, 132-136 (2007).

Furthermore, that the city filled two vacancies on January 4, 2002, during the pendency of LRB's request for clarification does not constitute a violation

jury returned a verdict in favor of McLaughlin on two separate theories of employment discrimination — discrimination on the basis of handicap, G. L. c. 151B, § 4(16), and interference with his protected rights, G. L. c. 151B, § 4(4A). The city's arguments on appeal are numerous, including that the Superior Court lacked jurisdiction over McLaughlin's discrimination claims for failure to exhaust the administrative process,[23] that the court erroneously allowed McLaughlin to relitigate matters decided before DALA and CRAB, and that McLaughlin failed to prove both a prima facie case of handicap discrimination and a claim of interference.

---

of G. L. c. 32, § 8, entitling McLaughlin to a summary judgment in his favor. Specifically, the city disputed through record evidence that it promoted two employees to captain on January 4, 2002, one with a start date of January 5, 2002, and the other with a start date of January 27, 2002. See note 5, *supra.* As previously discussed, G. L. c. 32, § 8(2), compels reinstatement of a retired employee "once properly cleared by the retirement board, and a vacancy exists." *Facella* v. *Newton,* 69 Mass. App. Ct. 459, 461 n.2 (2007), quoting from *Sullivan* v. *Brookline,* 435 Mass. at 354. It was not until January 25, 2002, that the LRB directed the city to reinstate McLaughlin as captain. At that time, no vacancies existed.

To the extent that McLaughlin challenges the city's subsequent request for clarification on May 14, 2002, we note that the issue was resolved by DALA and CRAB, no appeal was thereafter perfected, and therefore the claim is not properly before us for review.

[23]Specifically, the city contends that McLaughlin failed to file a predicate complaint with the Massachusetts Commission Against Discrimination (MCAD) prior to filing his complaint in Superior Court, as required by G. L. c. 151B, § 5. That much is undisputed. McLaughlin filed his original Superior Court complaint on May 24, 2004, his MCAD complaint on June 18, 2004, and his amended Superior Court complaint on February 9, 2006.

McLaughlin, however, points to G. L. c. 151B, § 9, inserted by St. 1950, c. 697, § 9, which permits an aggrieved person to seek temporary injunctive relief in the Superior Court "prior to the filing of a complaint with the [MCAD]." In its reply brief, the city concedes that McLaughlin could seek temporary injunctive relief in the Superior Court prior to filing his complaint with the MCAD; however, the city maintains that nothing in G. L. c. 151B, § 9, grants McLaughlin the authority to seek any relief other than a temporary injunction prior to filing a complaint. After hearing and argument, a judge denied McLaughlin's motion for a preliminary injunction on June 4, 2004, and the trial judge denied McLaughlin's second motion for a temporary restraining order or a preliminary injunction on or about April 27, 2007. As the city's claims may be more easily resolved on other grounds, we need "not today decide what subsequent procedural steps are required when a party seeks injunctive relief in the Superior Court prior to filing a complaint with the MCAD." *Lewis* v. *Area II Homecare for Senior Citizens, Inc.,* 397 Mass. 761, 762 n.3 (1986).

Following the jury verdict in McLaughlin's favor, the city moved, inter alia, for judgment notwithstanding the verdict, Mass.R.Civ.P. 50(b), as amended, 428 Mass. 1402 (1998). In denying the City's motion for judgment notwithstanding the verdict, the trial judge stated, in relevant part:

> "The jury reasonably could have found that the [city] discriminated against [McLaughlin] by fabricating a rule prohibiting the use of inhalers in order to thwart [McLaughlin's] efforts to resume his prior position of fire captain in the Lowell Fire Department. Although the [city] articulated a legitimate, nondiscriminatory basis for its stated policy against inhalers, the jury was not compelled to accept the [city's] justification. It would be inappropriate for this court to supplant its own judgment for that of the jury's on this factual determination.
>
> ". . .
>
> "This court has also rejected the [city's] argument that [McLaughlin] is not a qualified handicapped person as a matter of law in light of his failure to be reinstated by a unanimous medical panel. . . . Although the regional medical panel determines the plaintiff's ability to perform the essential duties of his position for purposes of reinstatement under G. L. c. 32, § 8, the failure to gain the unanimous approval of the panel does not foreclose discrimination claims based on conduct in connection with the reinstatement process. . . . Liability in this case is not grounded on an alleged failure to reinstate [McLaughlin], but rather on the [city's] creation of a rule against inhalers in order to undermine [McLaughlin's] ability to be reinstated."

While we do not lightly vacate a jury's verdict, we are compelled to conclude that the denial of the city's motion for judgment notwithstanding the verdict on both counts was error.[24]

---

[24]A copy of the city's motion for judgment notwithstanding the verdict does not appear in the record appendix. The record is, at best, unclear whether the city reiterated in its motion for judgment notwithstanding the verdict its argument with respect to McLaughlin's claim of interference.

We discern that the city argued that no facts existed on which McLaughlin

i. *Standard of review.* Review of the denial of a motion for judgment notwithstanding the verdict requires that we determine whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Raunela v. Hertz Corp.*, 361 Mass. 341, 343 (1972), quoting from *Kelly v. Railway Exp. Agency, Inc.*, 315 Mass. 301, 302 (1943). The city asserts that since the third medical panel did not unanimously opine that McLaughlin can perform the essential functions of his former job, he is not a "qualified handicapped person" under G. L. c. 151B, § 1(16), inserted by St. 1983, c. 533, § 2. We agree.

ii. *Handicap discrimination.* General Laws c. 151B, § 4(16), states in material part that it is an unlawful practice "[f]or any employer . . . to . . . refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation." The statute defines a "qualified handicapped person" as "a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap." G. L. c. 151B, § 1(16).

The present discrimination claim is one of alleged "disparate treatment." See *School Comm. of Braintree v. Massachusetts Commn. Against Discrimination*, 377 Mass. 424, 428-429 (1979). "A disparate treatment case is one in which the employer

---

could prove his claim of interference in its directed verdict motion, Mass.R. Civ.P. 50(a), 365 Mass. 814 (1974), which the city renewed at the close of all evidence.

On appeal, McLaughlin does not contend that the argument is unpreserved as a result of the city's failure to include it in its motion for judgment notwithstanding the verdict, and as such, we are left to infer that it has been properly preserved for appellate review. See *Michnik-Zilberman v. Gordon's Liquor, Inc.*, 390 Mass. 6, 8-9 (1983) (by renewing a motion for a directed verdict, a party preserves its right to appeal a subsequent denial of its motion for a judgment notwithstanding the verdict). See also *Bonofiglio v. Commercial Union Ins. Co.*, 411 Mass. 31, 34 (1991) ("As a motion for judgment notwithstanding the verdict is technically a revised motion for a directed verdict, no grounds for the motion for judgment notwithstanding the verdict may be raised which were not asserted in the directed verdict motion").

'purposefully uses' the protected status in making its employment decisions." *Porio* v. *Department of Rev.*, 80 Mass. App. Ct. at 61, quoting from *School Comm. of Braintree* v. *Massachusetts Commn. Against Discrimination, supra* at 428. McLaughlin avers that the city falsely created and asserted the departmental prohibition against the use of inhalers for the purpose of, or with the intended effect of, interfering with his attempt to seek reinstatement. "We have recognized a distinction between employment discrimination cases where the plaintiff alleges 'disparate treatment' and those cases involving a claim of 'disparate impact.' " *Whalen* v. *NYNEX Info. Resources Co.*, 419 Mass. 792, 795 (1995). See *Smith College* v. *Massachusetts Commn. Against Discrimination*, 376 Mass. 221, 227 (1978); *Cox* v. *New England Tel. & Tel. Co.*, 414 Mass. 375, 384 (1993).

A claim of "disparate treatment" requires a three-stage order of proof. *Labonte* v. *Hutchins & Wheeler*, 424 Mass. 813, 821 (1997), citing *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973). For recent articulations of the standard by the Supreme Judicial Court, see *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 127-128 (1997); *Abramian* v. *President & Fellows of Harvard College*, 432 Mass. 107, 116-118 (2000); *Knight* v. *Avon Prods., Inc.*, 438 Mass. 413, 420 n.4 (2003); *Sullivan* v. *Liberty Mut. Ins. Co.*, 444 Mass. 34, 39-40 (2005); and *Somers* v. *Converged Access, Inc.*, 454 Mass. 582, 594-595 (2009). First, the plaintiff bears the burden to show, by a preponderance of the evidence, a prima facie case of handicap discrimination. *Labonte* v. *Hutchins & Wheeler, supra.* "Once a prima facie case is made, the burden [of production] shifts to [the employer] to offer a legitimate nondiscriminatory reason for its action." *Ibid.* "In the event that occurs, . . . the burden then shifts back to the plaintiff to establish that the reason offered by the employer is not the real reason, but is in fact a pretext." *Boston* v. *Massachusetts Commn. Against Discrimination*, 47 Mass. App. Ct. 816, 821 (1999). "At the third stage the employee must show that the basis of the employer's decision was unlawful discrimination." *Abramian* v. *President & Fellows of Harvard College, supra* at 117. "Evidence that the employer's reasons are untrue gives rise, therefore, to an inference that the plaintiff was a victim of unlawful discrimination . . . [but]

[t]he employer may counter the effect of this evidence by showing that, even if his articulated reason for the adverse action is untrue, he had no discriminatory intent, or that his action was based on a different, nondiscriminatory reason." *Id.* at 118.

Here, McLaughlin failed in the first instance to establish a prima facie case of handicap discrimination. Because McLaughlin failed to demonstrate that he was a "qualified handicapped person" pursuant to G. L. c. 151B, § 1(16), the city's burden of articulating a legitimate, nondiscriminatory reason for its actions was never triggered, thus ending the inquiry. See *Beal* v. *Selectmen of Hingham,* 419 Mass. 535, 545 n.6 (1995). As such, the trial judge erred in concluding that despite the city's articulated, nondiscriminatory reason for its actions, the jury, nevertheless, "could have found that the [city] discriminated against [McLaughlin] by fabricating a rule prohibiting the use of inhalers in order to thwart the plaintiff's efforts to resume his prior position of fire captain in the Lowell Fire Department."

To establish a prima facie case of employment discrimination on the basis of handicap, McLaughlin must produce some evidence that he (1) "is 'handicapped' within the meaning of the statute"; (2) "is a 'qualified handicapped person' capable of performing the essential functions of his job either without accommodation or with a reasonable accommodation"; and (3) "was subject to an adverse employment action because of his handicap." *Godfrey* v. *Globe Newspaper Co.,* 457 Mass. 113, 120 (2010). See *Whalen* v. *NYNEX Info. Resources Co., supra* at 796. On appeal, the city does not dispute that McLaughlin is "handicapped" within the meaning of the statute.

McLaughlin's first challenge in establishing his prima facie case was to demonstrate that he was qualified to perform the essential functions of his job, a matter on which two statutes bear. See *Carleton* v. *Commonwealth,* 447 Mass. 791, 807-810 (2006); *Everett* v. *357 Corp.,* 453 Mass. 585, 610 (2009). McLaughlin contends that an adverse determination of his qualification under G. L. c. 32, § 8, does not foreclose his action under G. L. c. 151B and, as such, the jury properly found him to be capable of performing the essential functions of a captain. We disagree, and instead conclude that McLaughlin had no reasonable expectation of proving that he was capable of performing

the essential functions of a captain after the third medical panel, upon further reconsideration, validly determined otherwise.

"Where two statutes relate to the same subject matter and are not irreconcilable, 'they should be construed together so as to constitute a harmonious whole consistent with the legislative purpose.' " *Carleton* v. *Commonwealth, supra* at 809, quoting from *Commonwealth* v. *Spearin*, 446 Mass. 599, 604 (2006). As previously discussed, G. L. c. 32, § 8, governs a disability retiree's restoration to service, and, "as amended through St. 1996, c. 306, § 16, requires reinstatement of a retiree determined by a regional medical panel to be qualified for and physically able to perform the essential duties of the position from which he retired." *Pulsone* v. *Public Employee Retirement Admin. Commn.*, 60 Mass. App. Ct. 791, 793 (2004). The 1996 statutory amendments removed the discretionary authority of the appointing authority — here, the city — to approve or reject the reinstatement of a disability retiree notwithstanding that the retiree had been cleared by a medical panel and a vacancy existed. *White* v. *Boston*, 428 Mass. 250, 252 (1998). As *Pulsone* v. *Public Employee Retirement Admin. Commn., supra*, stated: "[t]he legislative purpose of [these] amendments was to require disability retirees who are capable of returning to work to do so."

In prohibiting the appointing authority from interposing itself as the final arbiter of a disability retiree's right to restoration, the Legislature accordingly vested in the regional medical panel the exclusive authority to determine whether a disability retiree is qualified for and able to perform a position's essential duties. Additionally, in 2000, PERAC amended 840 Code Mass. Regs. § 10.13(2) to require that the regional medical panel's determination be unanimous, and this amendment has been held a valid exercise of PERAC's rulemaking authority contained in G. L. c. 7, § 50(*a*).[25] *Id.* at 796-798. "[E]ven though [G. L. c. 32, § 8] standing alone does not express a 'manifest intent'

---

[25]General Laws c. 7, § 50, as amended through St. 1997, c. 19, § 5, outlines PERAC's powers and duties, including:

"(*a*) promulgating rules and regulations governing administrative procedures, financial operations, records and reports of the retirement boards, subject to the approval of the general court; provided, that if the

to require unanimous action by regional medical panels . . . , the Legislature's subsequent approval of PERAC's regulations imposing such a requirement sufficed to endorse PERAC's exercise of its rulemaking authority as being in harmony with the statute." *Id.* at 797. See *MRI Assocs., Inc.* v. *Department of Pub. Health*, 70 Mass. App. Ct. 337, 342 n.8 (2007). With respect to G. L. c. 151B, § 4(16), the underlying public policies "are clear: to protect 'handicapped individuals from deprivations based on prejudice, stereotypes, or unfounded fear, while giving appropriate weight to such legitimate concerns of [employers] as avoiding exposing others to significant health and safety risks.' " *Carleton* v. *Commonwealth*, 447 Mass. at 808, quoting from *Dahill* v. *Police Dept. of Boston*, 434 Mass. 233, 240 (2001). Furthermore, the antidiscrimination statute expressly permits an employer to "condition an offer of employment on the results of a medical examination conducted solely for the purpose of determining whether the employee, with reasonable accommodation, is capable of performing the essential functions of the job." G. L. c. 151B, § 4(16). That G. L. c. 32, § 8, together with the corresponding regulations ratified by the Legislature, compels reinstatement of a disability retiree only upon unanimous approval by the regional medical panel is "consistent with and promote[s] the Legislature's purposes and policies of protecting handicapped individuals from deprivations based on prejudice . . . while giving appropriate weight to . . . avoiding exposing others to significant health and safety risks." *Carleton* v. *Commonwealth, supra* at 810 (quotation omitted). We accordingly find no irreconcilable difference between G. L. c. 32, § 8, and G. L. c. 151B, § 4(16).[26] See *id.* at 809.

Furthermore, G. L. c. 151B, § 4(16), does not necessarily

---

general court takes no final action relative to such rules and regulations within forty-five days of the date said such rules and regulations are filed with the clerks of the house of representatives and the senate, the general court not having prorogued within said forty-five days such rules and regulations shall be deemed to be approved."

[26]The express provision in G. L. c. 32, § 8(2)(*d*), as amended by St. 1982, c. 630, § 19, that "[n]othing in this section shall excuse an employer . . . from compliance with the provisions of . . . paragraph sixteen of section four of chapter one hundred and fifty-one B" does not, as McLaughlin contends, require a claim under G. L. c. 151B to be remedied without regard to G. L. c. 32, § 8.

require that a judge or a jury make a determination essential to a plaintiff's prima facie case where, as here, a deliberate statutory scheme of civil service law expressly resolves itself to such a determination. In *Carleton* v. *Commonwealth, supra,* standards promulgated by the division of human resources at the direction of the Legislature prohibited a municipal fire fighter candidate from using a nonimplantable hearing aid, the precise accommodation sought by the plaintiff, to meet hearing requirements necessary to the performance of the job's essential functions. *Id.* at 806. The Supreme Judicial Court held that a candidate unable to meet health and fitness requirements by operation of a standard which rendered a certain accommodation unreasonable had no expectation of proving that he was a qualified handicapped person within the meaning of the antidiscrimination statute. *Id.* at 810.

In other words, in *Carleton* v. *Commonwealth, supra,* a standard was issued pursuant to civil service law which bore directly on the reasonableness of a requested accommodation under G. L. c. 151B, § 4(16); although that determination ultimately implicated the plaintiff's expectation of proving that he was a qualified handicapped person within the context of his antidiscrimination claim, the court concluded that such a determination was not subject to review, particularly because it was "based on consultations with medical and occupational experts in the field; [was] not the product of prejudice, stereotypes, or unfounded fear; and [was] ratified by the Legislature." *Id.* at 809-810. The civil service directives at issue here, promulgated both by the Legislature itself and PERAC at the Legislature's direction, bear directly on a determination of a disability retiree's capability to perform essential job functions. By the same logic, therefore, G. L. c. 151B, § 4(16), does not preclude the determination by the third medical panel in this instance.[27]

The Supreme Judicial Court's analysis in another recent case,

_____

[27]We recognize that G. L. c. 32, § 8, does not contemplate that the regional medical panel account for the possibility of a reasonable accommodation when determining a disability retiree's qualification to perform essential job duties. Here, however, it is of utmost significance that McLaughlin did not allege in his amended complaint that he ever requested an accommodation or that the city denied his accommodation request, and there is no evidence suggesting otherwise. See *Russell* v. *Cooley Dickinson Hosp., Inc.,* 437 Mass.

*Everett* v. *357 Corp.*, 453 Mass. 585, further informs our interpretation, although that case stands on slightly different procedural footing. There, the court concluded that the plaintiff, a former commercial truck driver seeking reinstatement following his discharge from a psychiatric hospital, did not meet his burden of demonstrating that he was a qualified handicapped person within the meaning of G. L. c. 151B because he did not comply with Federal Department of Transportation (DOT) regulations requiring a commercial truck driver to have a certificate, based on a medical examination, attesting to his physical and mental fitness to drive. *Id.* at 589 & n.8, 610 & n.33. The doctor's conclusion that he was not "healthy to drive" rendered him presumptively unqualified, a status which he failed to properly appeal to the DOT. *Id.* at 610. "The question of his qualifications for his job — a dispositive prong of his prima facie case — was not for the jury, or for the judge, but for the DOT, subject to review by the United States Court of Appeals." *Ibid.* The plaintiff's recourse in the face of the employer's alleged discrimination, therefore, lay with the administrative process, effectively precluding the plaintiff from litigating the propriety of the employer's reliance on the doctor's recommendation, *id.* at 609 ("Because DOT had exclusive authority over the qualification issue . . . the judge was required to refer the issue to the agency"), and irrationally allowing the jury to "serve as the ultimate arbiter[] of the meaning and application

---

443, 457 (2002) ("[I]t is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one" [quotation omitted]). See also *Massachusetts Bay Transp. Authy.* v. *Massachusetts Commn. Against Discrimination*, 450 Mass. 327, 341-342 (2008). Contrast *Ocean Spray Cranberries, Inc.* v. *Massachusetts Commn. Against Discrimination*, 441 Mass. 632, 649-650 (2004) (three letters taken together against the backdrop of previous ignored requests constituted substantial evidence supporting an unmistakable request for an accommodation triggering an employer's obligation under c. 151B).

Instead, at trial, McLaughlin maintained that between December, 2000, and the present, he had not felt that he needed any accommodation to perform fire fighting duties and, thus, he never requested one. Moreover, on appeal, McLaughlin states that he "neither sought nor obtained from the jury a verdict holding the city liable for denying McLaughlin a reasonable accommodation. . . . Nowhere on the Verdict Slip was the jury asked to determine liability based on a denial of reasonable accommodation to McLaughlin. Nor did the Plaintiff's closing argument to the jury in any way make such a claim."

of DOT regulations." *Id.* at 611, quoting from *Campbell* v. *Federal Express Corp.*, 918 F. Supp. 912, 919 (D. Md. 1996).

On the facts before us, there is no dispute that McLaughlin followed proper procedure in challenging the propriety of the third medical panel's determination under G. L. c. 32. See *Sullivan* v. *Brookline*, 435 Mass. at 355 n.1 ("Neither G. L. c. 32, § 8[2], nor § 16, provides administrative appeal from a regional medical panel's decision. The plaintiff was, therefore not subject to any exhaustion requirement [before bringing his complaint in Superior Court]"). Similar to the plaintiff in *Everett* v. *357 Corp.*, *supra*, however, McLaughlin was improperly permitted to litigate an issue — his qualification to perform essential job duties — based on facts that were not then subject to review.[28] Here, McLaughlin failed to obtain the requisite approval for reinstatement under G. L. c. 32, § 8(2). As previously discussed, the third medical panel did not unanimously opine that McLaughlin was capable of performing the essential functions of his job. The basis of that decision rested on the existence of a departmental prohibition against the use of inhalers, deemed valid following administrative review by both DALA and CRAB.[29] McLaughlin argues that the existence of this departmental prohibition — the fact to be given preclusive effect — is

[28]Although, generally, a "[d]etermination of a job's essential functions requires an individualized inquiry" typically reserved for a fact finder, and an "employer's judgment as to which functions are essential is a factor to be considered, but it is not controlling[,]" *Smith* v. *Bell Atl.*, 63 Mass. App. Ct. 702, 712 (2005) (quotation omitted), both *Carleton* v. *Commonwealth*, *supra*, and *Everett* v. *357 Corp.*, *supra*, illustrate instances where a question with respect to a dispositive prong of the plaintiff's prima facie case may properly fall outside the province of a judge or a jury. Thus, that under G. L. c. 32, § 8(2), "[t]he determination of what constitutes an essential duty of a job or position is to be made by the employer, based on all relevant facts and circumstances and after consideration of a number of factors" is of no consequence here. 840 Code Mass. Regs. § 10.20 (2004). See *Godfrey* v. *Globe Newspaper Co.*, 457 Mass. 113, 121 (2010) (where the parties do not dispute which functions of an employee's job are essential, there is no material dispute of fact).

[29]We address briefly McLaughlin's contention that the city failed to preserve its argument with respect to collateral estoppel, an issue we conclude to be without merit. At the close of McLaughlin's case, the city moved for a directed verdict, Mass.R.Civ.P. 50(a), 365 Mass. 814 (1974), on the ground that McLaughlin did not meet the definition of a "qualified handicapped person" under G. L. c. 151B, § 1(16), among others. That motion was denied, renewed

fundamentally different from his allegation that the city falsely asserted that prohibition for the purpose of, or with the intended effect of, interfering with his attempt to seek reinstatement. McLaughlin's view overly narrows the preclusive effect of DALA's and CRAB's determinations, however. What DALA and CRAB determined was that knowledge by the medical panel of the existence of the departmental prohibition was a factor critical to its ultimate determination. Simply put, the administrative proceedings concerned the full extent of information bearing on McLaughlin's ability to perform his essential duties. The validity of the prohibition was an issue fully and finally litigated before two different tribunals, from which no appeal was perfected. To the extent that McLaughlin contends that the city falsely asserted this prohibition, his remedy rested with the administrative appeal process afforded him pursuant to G. L. c. 30A, § 14.

Therefore, it was error to admit evidence tending to demonstrate that McLaughlin nevertheless met the definition of a qualified handicapped person within the meaning of the antidiscrimination statute. In this instance, absent other allegations indicative of impropriety, the third medical panel's determination under G. L. c. 32, § 8, constituted conclusive evidence of McLaughlin's status as an unqualified handicapped person for the purposes of G. L. c. 151B, § 4(16). Moreover, we are aware of no situation in which a judge or a jury may

---

at the close of evidence, and again denied. While the city did not expressly argue collateral estoppel at the time that it had moved for a directed verdict, the city renewed all prior objections and motions, which the trial judge recognized were "all on the record in great length and detail."

Specifically, prior to trial, the city had filed a motion in limine to preclude McLaughlin from relitigating issues of fact and law resolved by DALA and CRAB. Moreover, the city argued collateral estoppel in its motion for judgment notwithstanding the verdict. "While the [city] perhaps should have explicitly included [the issue of collateral estoppel] in [its] motions for direct verdicts, [its] failure to do so does not bar our review of that issue now. The judge had adequate notice of this issue, which was fully presented at the pretrial stage and again at the posttrial stage. In addition, the issue [of collateral estoppel] is closely connected to the issue whether [McLaughlin meets the definition of a qualified handicapped person]." *Cole* v. *Westinghouse Bdcst. Co.*, 386 Mass. 303, 307-308, cert. denied, 459 U.S. 1037 (1982). See *Ladd* v. *Polidoro*, 424 Mass. 196, 197-198 (1997) (issue not specified in written motion for directed verdict preserved so long as it had been raised at other points during trial and therefore was adequately brought to the judge's attention).

properly substitute its decision for one within the authority of the regional medical panel under G. L. c. 32, § 8. See, e.g., *Ferraro* v. *Contributory Retirement Appeal Bd.*, 57 Mass. App. Ct. 728, 730, 731 (2003) ("[w]hen a negative certificate of a medical panel member is deficient because an incorrect legal standard has been applied by a physician . . . [t]he appropriate remedy is a remand directing CRAB to submit the matter to a new regional medical panel"). As such, here, the jury impermissibly "serve[d] as the ultimate arbiters of the meaning and application of [PERAC regulations]." *Everett* v. *357 Corp.*, *supra* at 611 (quotation omitted).

Based on the above, the statutory scheme governing the reinstatement to service of a disability retiree operates to replace the fact-finding function of either judge or jury specifically with respect to whether the disability retiree is a qualified handicapped person under the antidiscrimination statute, a determination by which the court is bound where the facts underlying that determination are not subject to review. We conclude, therefore, that McLaughlin had no reasonable expectation of proving a prima facie case for handicap discrimination, namely, that he is "qualified handicapped person" within the meaning of G. L. c. 151B, § 1(16), and as such, the judge erred in denying the city's motion for judgment notwithstanding the verdict.[30,31]

iii. *Interference.* General Laws c. 151B, § 4(4A), inserted by

---

[30]Our analysis is further informed, by analogy, to the line of cases applying the doctrine of estoppel to a claim of handicap discrimination based on an apparent contradiction arising out of a plaintiff's prior application for disability benefits or the plaintiff's prior acceptance of a worker's compensation settlement.

Courts have generally held, most often in light of motions for summary judgment, that "a plaintiff's prior pursuit, and receipt, of benefits based on an assertion of 'total disability' does not automatically estop her from pursuing a claim of employment discrimination on the basis of disability under G. L. c. 151B, § 4(16), so long as a disputed issue of fact remains whether the plaintiff is able to perform the 'essential functions of the position involved.' " *Russell* v. *Cooley Dickinson Hosp., Inc.*, 437 Mass. at 452. See *Labonte* v. *Hutchins & Wheeler*, 424 Mass. at 816; *Tompson* v. *Department of Mental Health*, 76 Mass. App. Ct. 586, 594 (2010), cert. denied, 132 S. Ct. 512 (2011). Contrast *Beal* v. *Selectmen of Hingham*, 419 Mass. at 543. Hence, to survive an argument of estoppel in this context, the plaintiff must be able to raise a question of fact by introducing some other evidence with respect to his or her qualification to perform a job's essential functions. Where, however, the plaintiff's previous action creates, under the terms of an applicable

St. 1989, c. 722, § 14, states, as here relevant: "[i]t shall be an unlawful practice . . . [f]or any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter." There is no question that G. L. c. 151B, § 4(4A), prohibits interference with an employee's right to work in an environment free of unlawful handicap discrimination. Where, on the present facts, action does not lie against the city under G. L. c. 151B, § 4(16), we conclude that the same conduct cannot impose liability on the city under G. L. c. 151B, § 4(4A).[32]

The complaint alleged, and the jury found, that the city's conduct constituted discriminatory interference with McLaughlin's protected rights in violation of G. L. c. 151B, § 4(4A). At trial, McLaughlin represented that the interference consisted of the city's creation and/or assertion of the purported departmental prohibition on inhalers. On appeal, the city correctly contends that the evidence failed to prove interference, albeit for reasons less nuanced than those which we announce today.[33] We accordingly hold that the trial judge erred in denying the city's motion for judgment notwithstanding the verdict on this count.

statute, a presumption that he or she is unable to work and that presumption cannot be rebutted, the plaintiff is not a "qualified handicapped person" for the purposes of G. L. c. 151B, § 4(16). *Scott* v. *Encore Images, Inc.*, 80 Mass. App. Ct. 661, 667-668 (2011).

Therefore, a plaintiff may lose the fight to pursue a discrimination claim either because there exists no disputable issue of fact with respect to his prior claim of disability or because of his inability to rebut a statutory presumption of his inability to return to work. Likewise, McLaughlin lost his fight to pursue his discrimination claim by his failure to receive a unanimous medical panel determination.

[31]Given this result, there is no need to address McLaughlin's claim that the judge failed to order appropriate relief under the statute, including reinstatement and back pay.

[32]A claim of interference under G. L. c. 151B, § 4(4A), requires an analysis separate and distinct from that used to resolve a claim of retaliation under G. L. c. 151B, § 4(4). See *Lopez* v. *Commonwealth*, 463 Mass. 696, 708 (2012). We recognize that a retaliation claim does not depend on the success of the underlying discrimination claim. See *Sahli* v. *Bull HN Info. Sys., Inc.*, 437 Mass. 696, 699-700 n.8 (2002); *Smith* v. *Winter Place LLC*, 447 Mass. 363, 364 n.4 (2006); *King* v. *Boston*, 71 Mass. App. Ct. 460, 474 n.12 (2008).

[33]This is not an instance where the city's brief fails to support an issue with legal authority as mandated by Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Contrast *Cameron* v. *Carelli*, 39 Mass. App. Ct. 81, 85 (1995).

We are not aware of any case in which a Massachusetts court has addressed squarely the issue whether an employer may be held liable for interfering with an employee's protected right in the absence of unlawful discrimination. The challenges more readily confronted by courts in applying G. L. c. 151B, § 4(4A), have instead related to the contours of the underlying relationship between the parties and the effects thereof. See *Lopez* v. *Commonwealth*, 463 Mass. 696, 706 (2012) (defendant "need not be an employer to be subject to an interference claim under § 4[4A]"); *Thomas O'Connor Constructors, Inc.* v. *Massachusetts Commn. Against Discrimination*, 72 Mass. App. Ct. 549, 554-560 (2008) (employee of a subcontractor permitted to sue general contractor). We conclude that the broad language of G. L. c. 151B, § 4(4A), easily reaches the employment relationship between McLaughlin and the city.

Of importance here, the Supreme Judicial Court has recognized that as the term is used in G. L. c. 151B, § 4(4A), "interfere" "is appropriately considered with, and interpreted in light of, the words 'coerce,' 'intimidate,' and 'threaten' that precede it, and that each implies some form of intentional conduct." *Lopez* v. *Commonwealth*, *supra* at 708. At the very least then, interference with a plaintiff's right to be free from discrimination must be intentional. *Id.* at 709. In *Lopez* v. *Commonwealth*, *supra* at 711, the plaintiffs, minority police officers employed by various municipalities not named as defendants in the action, alleged that the Commonwealth and the division of human resources knowingly created and administered a Statewide multiple-choice examination which disproportionately disadvantaged minority candidates seeking promotions. The court rejected the defendants' contention that the term "interfere" encompassed only acts specifically undertaken with the intent to deprive the plaintiffs a protected right, and in doing so, recognized that in cases of alleged disparate impact, "the element of intentionality is satisfied where it is shown that a defendant knowingly interfered with the plaintiffs' right to be free from discrimination." *Id.* at 710-711.

For the purposes of G. L. c. 151B, § 4(4A), the Supreme Judicial Court determined that proof of discrimination premised on a theory of disparate impact may properly support a prima facie claim of interference. *Ibid.* ("We decide today that, like a

claim under [G. L. c. 151B,] § 4(1), . . . an interference claim under § 4(4A) may be established by evidence of disparate impact"). Hence, implicit in the court's holding is the need for actionable discriminatory conduct, irrespective of the theory of discrimination on which that conduct is based. Absent actionable discriminatory conduct, there exists no basis on which to ground a claim of interference. Applying this principle here, therefore, McLaughlin's failure to demonstrate that the city subjected him to unlawful discrimination on the basis of his handicap effectively precludes him from proving that the city interfered with his protected rights under G. L. c. 151B.[34]

4. *Conclusion.* Consequently, for the reasons discussed above, we affirm the allowance of the city's motion for summary judgment, and reverse the denial of the city's motion for judgment notwithstanding the verdict.

*So ordered.*

---

[34]Because there is little case law on the application of G. L. c. 151B, § 4(4A), to a claim of interference, we look to the Massachusetts Commission Against Discrimination for guidance, even though its interpretation of G. L. c. 151B does "not carry the force of law." See *Mammone* v. *President & Fellows of Harvard College*, 446 Mass. 657, 675 (2006), quoting from *Cargill* v. *Harvard Univ.*, 60 Mass. App. Ct. 585, 594 (2004). "By including § 4(4A) in c. 151B, the Legislature intended to extend the statute's reach beyond employer-employee interactions to encompass discriminatory conduct by third parties to which an employee could be subjected." Massachusetts Commn. Against Discrimination *vs.* Thomas O'Connor Constructors, MCAD, No. 98-BEM-3762 (Jan. 21, 2005). See *Thomas O'Connor Constructors Inc.* v. *Massachusetts Commn. Against Discrimination*, 72 Mass. App. Ct. at 556-557. As such, § 4(4A) is best understood as a device through which an individual falling outside the scope of the definition of "employer" may otherwise be liable for conduct which the antidiscrimination statute aims to prevent. Additionally, we note that where the MCAD has imposed liability on an individual pursuant to G. L. c. 151B, § 4(4A), for interfering with the complainant's right to work free of unlawful handicap discrimination, the complainant first had established by substantial evidence a violation of G. L. c. 151B, § 4(16). See, e.g., Woodason *vs.* Norton Sch. Comm., MCAD, No. 98-BEM-624 (Feb. 19, 2003); Bendell *vs.* Lemax, Inc., MCAD, No. 95-BEM-807 (Mar. 6, 2003); Damon *vs.* Incre, Inc., MCAD, No. 95-BEM-2594 (July 2, 2003).