NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-676                                          Appeals Court

JOHN RODRIGUES  vs.  PUBLIC EMPLOYEE RETIREMENT
ADMINISTRATION COMMISSION.

No. 19-P-676.

Suffolk.     March 11, 2020. - September 29, 2020.

Present:  Meade, Sacks, & Englander, JJ.

Public Employee Retirement Administration Commission.  Public
     Employment, Reinstatement of personnel, Retirement.  Labor,
     Fire fighters, Public employment.  Fire Fighter, Hiring,
     Incapacity, Retirement.  Anti-Discrimination Law, Handicap,
     Age, Offer of reinstatement, Employment.  Hearing-Impaired
     Person.  Handicapped Persons.  Employment, Discrimination.
     Declaratory Relief.

Civil action commenced in the Superior Court Department on
February 13, 2013.

The case was heard by Karen F. Green, J., on a motion for
summary judgment, and following the grant of summary judgment, a
motion to dismiss the remaining claims was heard by her.

Harold L. Lichten for the plaintiff.
Erica Morin, Assistant Attorney General, for the defendant.

ENGLANDER, J.  The plaintiff, John Rodrigues, appeals from

a judgment dismissing his claims against the Public Employee

Retirement Administration Commission (PERAC).  Rodrigues sued PERAC seeking, fundamentally, reinstatement to his former position as a firefighter in the Fall River fire department. Rodrigues had held that position for eighteen years, until he became retired due to a disability -- a heart condition -- in 2010.  In 2012, Rodrigues sought reinstatement pursuant to G. L. c. 32, § 8.  He was denied reinstatement because he failed to meet the hearing acuity requirements of the "initial" health and physical fitness standards for firefighters, as promulgated by the Commonwealth's human resources division (HRD) pursuant to G. L. c. 31, § 61A.  Under those standards, Rodrigues could not use a hearing aid when taking the hearing test.  In 2015, Rodrigues again sought reinstatement and was again denied, this time for two reasons:  (1) failure to meet the hearing requirements, and (2) a "small but significant" heart issue.

Rodrigues initiated this action after the 2012 denial, and amended his complaint after the 2015 denial.  The amended complaint asserts three basic claims, in nine counts:  (1) that PERAC improperly administered the reinstatement process of G. L. c. 32, § 8, (2) unlawful handicap discrimination, and (3) unlawful age discrimination.  As to the first claim, the gist of Rodrigues's argument is that under c. 32, § 8, he is "able to perform the essential duties of the position from which he retired," and that PERAC's decision to apply HRD's "initial"

standards (applicable to entry-level firefighters) to his reinstatement request was wrong as a matter of law. Rodrigues's discrimination claims similarly challenge that part of the HRD initial standard that prohibits the use of hearing aids.

We conclude that seven of Rodrigues's counts -- in particular, those seeking reinstatement or damages relief -- were properly dismissed, given that the c. 32, § 8, regional medical panel determined in 2015 that Rodrigues was ineligible for reinstatement not only because of his hearing, but also because of his heart condition. We also conclude, however, that Rodrigues's claims for declaratory relief should not have been dismissed, as they raise significant questions of law as to whether PERAC should be applying HRD's initial fitness standards in a return to service context. We accordingly remand for further proceedings the claims for a declaratory judgment concerning PERAC's compliance with c. 32, § 8, and c. 31, § 61A.

Background.[1]  1.  Rodrigues's return to service denials. Rodrigues began as a firefighter with the Fall River fire department in 1993. Rodrigues was compelled to retire due to disability in March of 2010, after receiving a diagnosis of a congenital heart condition. Thereafter, Rodrigues began

---

[1] We recount the facts in the light most favorable to Rodrigues. See Carleton v. Commonwealth, 447 Mass. 791, 793 (2006).

receiving a disability retirement allowance.  Apparently, the heart condition did not substantially alter Rodrigues's lifestyle; he has maintained a vigorous exercise regimen during retirement.

Two years after his disability retirement, Rodrigues sought reinstatement through the c. 32, § 8, "reexamination" and "restoration to service" (return to service) process.  That statute requires all members of public employee retirement systems on disability retirement to undergo periodic medical evaluations to determine whether they are "able to perform the essential duties" of their prior position.  G. L. c. 32, § 8 (1) (a), (2) (a).  The process works as follows:[2]  the retiree undergoes an initial evaluation, which may be conducted by a single physician appointed by PERAC; if the retiree is found able to perform the essential duties of his former position, he is then separately evaluated by three physicians comprising a "regional medical panel," appointed by PERAC.  If all members of that panel also find that the retiree is able to perform the essential duties, then the retiree must be reinstated.  See G. L. c. 32, § 8 (2) (a); 840 Code Mass. Regs. § 10.13(2)

_____

[2] We draw from the PERAC regulations, as well as from the deposition transcript of Patrice Looby, a PERAC employee, who testified to PERAC's practice and procedure.  We apply the version of the regulations in effect during the relevant time period.

(2000); 840 Code Mass. Regs. § 10.15(2) (2004). One important component of this process is the standards applied to determine whether a disability retiree is able to perform those essential duties; for firefighters like Rodrigues, PERAC instructs the physician evaluators to apply HRD's initial health and fitness standards promulgated pursuant to c. 31, § 61A, applicable to persons first being appointed as firefighters.

a. The 2012 evaluation. The physician who conducted the initial evaluation of Rodrigues in 2012 (2012 evaluation) concluded that his hearing loss exceeded the amount permitted by the initial HRD health and fitness standards in effect at the time. Under those standards, Rodrigues was not allowed to wear a hearing aid during the test, and he could not have hearing loss of an average of thirty-five decibels (dB) or more in either ear. The test results showed an average of 60 dB hearing loss in Rodrigues's left ear, and an average of 62.5 dB hearing loss in his right. The physician concluded that Rodrigues was ineligible for reinstatement, and PERAC so notified Rodrigues in March of 2012. In December of 2012, Rodrigues sought reconsideration, which was denied in January of 2013.[3]

---

[3] Rodrigues submitted results from a hearing test performed by a physician that he had retained, sometime after the 2012 evaluation. Those results were better than Rodrigues's 2012 evaluation tests, but still showed thirty-five dB average hearing loss in both ears.

b. The 2015 evaluation. In 2015, Rodrigues underwent a second round of return to service evaluations. This time he passed the initial evaluation, and was thereafter evaluated by a regional medical panel (medical panel or panel) composed of two cardiologists and one otolaryngologist (an ear, nose, and throat physician). One of the cardiologists found that Rodrigues was able to perform the job's essential duties. A second cardiologist, however, found a "small but significant risk for [a] cardiac event to occur with strenuous exercise," and that "severe emotional or physical stress" -- which is expected for firefighters -- posed a "risk of sudden cardiac death or myocardial infarction." Accordingly, the second cardiologist concluded that Rodrigues was ineligible to return to service. The third physician, the otolaryngologist, determined that Rodrigues's hearing loss in his left ear exceeded the HRD standard then in effect.

2. Rodrigues's lawsuit. Rodrigues filed his initial complaint against PERAC in the Superior Court in February of 2013. In June of 2013, Rodrigues filed a charge against PERAC with the Massachusetts Commission Against Discrimination (MCAD), and Rodrigues subsequently amended his complaint to include multiple antidiscrimination claims arising under G. L. c. 151B, § 4. After he was denied reinstatement in 2015, Rodrigues filed another MCAD charge, and again amended the Superior Court

complaint. As noted, the final version of the complaint, filed on March 3, 2016, asserted three basic claims -- handicap discrimination, age discrimination, and failure to comply with G. L. c. 32, § 8.[4]

PERAC eventually moved for summary judgment on all counts, and initially the judge granted summary judgment for PERAC on seven of the nine. Thereafter, PERAC moved to dismiss both remaining counts for lack of subject matter jurisdiction. With respect to count one, PERAC invoked a sovereign immunity defense -- it argued that the claim was not a proper claim for a declaratory judgment, because it sought a declaration regarding "individual, personal rights," rather than the legality of PERAC's "practices and procedures." The judge dismissed the two remaining counts, and final judgment entered. Rodrigues appealed.

---

[4] The nine counts are: (1) a challenge to PERAC's application of c. 32, § 8; (2) a request for declaratory and injunctive relief regarding PERAC's failure to require the use of "age-adjusted hearing standards," in violation of c. 31, § 61A; (3-4) age and handicap discrimination, in violation of G. L. c. 93, §§ 102-103, and art. 114 of the Amendments to the Massachusetts Constitution; (5-6) handicap discrimination and failure to provide reasonable accommodation, in violation of c. 151B, § 4 (16); (7-8) age discrimination and disparate impact, in violation of c. 151B, § 4 (1C); and (9) age and handicap discrimination constituting interference with c. 151B rights, and having a disparate impact, in violation of c. 151B, § 4 (4A).

Discussion. 1. The discrimination claims. We first address Rodrigues's claims that he was discriminated against based upon handicap and age, as a result of the application of the HRD standards for hearing.[5] To succeed on an individual claim of handicap or age discrimination, Rodrigues would need to prove, among other things, (1) that the application of the HRD hearing standards constituted age or handicap discrimination, and (2) that he was qualified for the position. See, e.g., Gannon v. Boston, 476 Mass. 786, 793-795 (2017) (identifying elements of handicap discrimination, and describing burden-shifting framework for proving handicap discrimination claim); Somers v. Converged Access, Inc., 454 Mass. 582, 595-599 (2009) (same for age discrimination).

Here Rodrigues's claims founder on the second of these requirements -- he cannot show that he was otherwise qualified for the position. With respect to the 2015 decision, even if Rodrigues could succeed in challenging the hearing standards, the adverse finding regarding his heart condition by itself disqualified him from reinstatement. As noted, one of the

---

[5] The Supreme Judicial Court in Carleton, 447 Mass. at 805-807, discussed the bases for the HRD rule that a firefighter applicant could not use a hearing aid while taking a hearing test. In short, the court noted that as of the time of its opinion there were significant public safety concerns with having firefighters wearing hearing aids while fighting a fire, including in particular the risks of malfunction from exposure to water. Id. at 806.

cardiologists on the 2015 medical panel found a "small but significant risk for [a] cardiac event," including "sudden cardiac death." Under c. 32, § 8 (2) (a) and PERAC's regulations, the cardiologist's conclusion meant that Rodrigues had to be denied reinstatement. The regulations state that all three members of the panel must agree that reinstatement is appropriate, and we have upheld the validity of this requirement. See 840 Code Mass. Regs. § 10.13(2); Pulsone v. Public Employee Retirement Admin. Comm'n, 60 Mass. App. Ct. 791, 796 (2004). Moreover, the panel's decision is controlling -- we have said that the panel has "exclusive authority to determine whether a disability retiree is qualified for and able to perform a position's essential duties." McLaughlin v. Lowell, 84 Mass. App. Ct. 45, 65 (2013).

Rodrigues argues that his discrimination claims as to the 2015 denial should nevertheless be allowed to go forward. Citing Gannon, Rodrigues essentially contends that a court could reject the panel's medical determination regarding his heart condition, and instead conclude that, for the purposes of c. 151B, § 4 (16), he was "capable of performing the essential functions of the position" without posing "an unacceptably significant risk of serious injury" to himself or others. Gannon, 476 Mass. at 799. The argument is unavailing. The cardiologist's findings mean that Rodrigues was not qualified --

he was not able to perform the essential functions of the job, as determined under the HRD health and fitness standards for firefighters.

Those findings of the medical panel cannot be overturned or disregarded in this lawsuit, as Rodrigues would have us do. McLaughlin is controlling on this point.  There the plaintiff firefighter (McLaughlin) had been denied reinstatement under c. 32, § 8, by a medical panel, but his handicap discrimination claim was nevertheless allowed to go to a jury, on the theory that the job requirement at issue -- that he not use an inhaler at fire scenes -- had been imposed for discriminatory purposes. McLaughlin, 84 Mass. App. Ct. at 49-50.  McLaughlin was asthmatic, so the prohibition on inhalers rendered him unable to perform some of his essential duties.  Id. at 48, 53-54.

The jury returned a verdict for McLaughlin on the handicap discrimination claim, but this court reversed.  McLaughlin, 84 Mass. App. Ct. at 50, 74.  We held that McLaughlin could not make out such a claim as a matter of law, because the panel's determination established conclusively that he was not qualified for his former position.  Id. at 69-70.  The medical determination that McLaughlin was unfit could not be overridden in court:  "[W]e are aware of no situation in which a judge or a jury may properly substitute its decision for one within the

authority of the regional medical panel." Id. at 70-71.[6]  See

Carleton, 447 Mass. at 807-810 (holding that firefighter's

handicap discrimination claim was foreclosed by application of

HRD's initial standards for firefighters).[7]  Similarly here,

because the panel determined Rodrigues to be unqualified under

the HRD health and fitness standards due to his cardiac health,

he did not have viable claims under c. 151B.[8]

---

[6] We noted in McLaughlin, 84 Mass. App. Ct. at 51-52, that
there were other remedial avenues for addressing legal issues
raised during the reinstatement process, such as the
administrative appeal process.  And, as we hold infra, a
declaratory judgment action will lie in some circumstances to
test the legality of agency actions.  Beyond that, the panel's
determination would not be wholly insulated from judicial review
-- if, for example, the panel engaged in "impropriety" or
violated applicable constitutional norms.  Id. at 70.

[7] While Rodrigues challenges the panel's factual
determination regarding his cardiac health, he does not
challenge the appropriateness of the cardiac standards applied
to him, or claim that those cardiac standards could somehow be
overridden in connection with a claim brought under c. 151B,
§ 4, based upon handicap or age discrimination.  Nor did
Rodrigues request any reasonable accommodation with respect to
his heart condition.  In any event, the Supreme Judicial Court
in Carleton addressed the related issue of whether c. 151B's
antidiscrimination provisions could override a determination
that a firefighter is medically unfit based upon HRD's
legislatively-ratified initial standards for firefighters, and
held that they could not.  See Carleton, 447 Mass. at 807-810.
While Carleton was not a return to service case and thus the
issue before the court was somewhat different, the reasoning of
Carleton is instructive here.  Among other things, the court
noted that "public safety is paramount" in the determination of
a firefighter's qualifications.  Id. at 809.

[8] The decision in Gannon is not applicable because Gannon
did not involve a restoration to service under G. L. c. 32, § 8,

Rodrigues also cannot prevail on the c. 151B claims based upon the earlier denial of reinstatement, in 2012. In particular, as to the March 2012 denial Rodrigues did not file his MCAD charge until June of 2013, and so failed to meet the 300-day requirement of G. L. c. 151B, § 5 (charge must be "filed within 300 days after the alleged act of discrimination"). We reject Rodrigues's argument that his filing was nevertheless timely because it was made within 300 days of the January 2013 denial of his request for reconsideration. Rodrigues cannot extend the 300-day period by the simple expedient of a request to reconsider, at least where the request did not show any material changed circumstances. Here reconsideration was denied on the same basis as the March 2012 denial. Moreover, inasmuch as c. 32, § 8 (1) (a), specifically provides that an evaluation "shall occur not more frequently than once in any twelve month period," the request for reconsideration cannot be treated as an independent application.[9],[10]

---

and thus there was no finding of a medical panel. See Gannon, 476 Mass. at 786-792.

[9] In light of our conclusion that summary judgment was properly granted on this ground, we need not address PERAC's argument that it is not an "employer" of firefighters within the meaning of c. 151B.

[10] The judge also correctly dismissed claims brought under G. L. c. 93, § 103 (§ 103), which creates a cause of action to enforce rights against handicap discrimination under art. 114 of the Amendments to the Massachusetts Constitution, as well as

2.  Declaratory relief claims.  In addition to his claims
for reinstatement or damages, Rodrigues also brought claims
seeking declaratory relief -- in particular, count one seeks,
among other things, a determination that PERAC should apply age-
adjusted, in-service health and fitness standards in determining
restoration to service under c. 32, § 8, and count two
specifically seeks a declaration that PERAC violated G. L.
c. 31, § 61A, by failing to employ such age-adjusted hearing
standards.

These claims should not have been dismissed.  They raise
primarily questions of law that could well arise in any of
Rodrigues's future reinstatement evaluations (which under G. L.
c. 32, § 8 [1] [a], are to occur at least every three years),
not to mention those of other firefighters and police officers
on disability retirement.  The legal questions implicate the
requirements of the two above-mentioned statutes, and how those
statutes interrelate.  Answering them also will require analysis

---

against age discrimination.  See Carleton, 447 Mass. at 812.
Carleton states that art. 114's prohibition on employment
discrimination based on handicap is not broader than c. 151B's
prohibition, and a § 103 claim to enforce art. 114 will not lie
where a c. 151B claim is or was available.  Id. at 812-813.  As
with the plaintiff in Carleton, because Rodrigues's handicap
discrimination claim brought under c. 151B, § 4 (16), fails as a
matter of law, he does not have a viable § 103 handicap
discrimination claim.  The same rationale disposes of
Rodrigues's § 103 age discrimination claim, because a c. 151B
claim for such discrimination was available to Rodrigues.

of a 2016 regulation issued by PERAC, discussed infra. The issue is appropriate for declaratory relief. See Nordberg v. Commonwealth, 96 Mass. App. Ct. 237, 241 (2019) ("the [Supreme Judicial Court] has reiterated that a dispute over an official interpretation of a statute constitutes a justiciable controversy for purposes of declaratory relief" [quotation omitted]). See Villages Dev. Co. v. Secretary of the Executive Office of Envtl. Affairs, 410 Mass. 100, 106 (1991) (stating requirements for obtaining declaratory relief with regard to administrative action).[11]

PERAC argues that count one was properly dismissed nonetheless, for two reasons. First, PERAC contends that it is the wrong defendant in this declaratory judgment action, because PERAC neither establishes the health and fitness standards (HRD does) nor makes factual findings regarding those standards (the medical panels do). We disagree. PERAC administers the c. 32, § 8, return to service process, and as part of that process PERAC directs the physicians to apply HRD health and fitness standards. PERAC is, accordingly, responsible for choosing a legally appropriate set of standards. It is undisputed that in

---

[11] To the extent that Rodrigues's claim brought under c. 32, § 8, also seeks individual retrospective relief in addition to a declaratory judgment, that claim also fails. Assuming (without deciding) that there is an independent claim for such relief, Rodrigues cannot prevail given the lawful denial based on his heart condition, as discussed supra.

the context of firefighters seeking to return to service, PERAC directed the use of the "initial" standards.

PERAC next contends that Rodrigues did not properly state a claim for a declaratory judgment, reiterating its argument that Rodrigues is seeking relief for himself as an individual, and that individual relief is not available against the Commonwealth under the declaratory judgment act, G. L. c. 231A, §§ 1-9.  See c. 231A, § 2 (authorizing "procedure . . . to obtain a determination of the legality of the administrative practices and procedures of any . . . state agency" which have been "consistently repeated" [emphasis added]).  PERAC's argument relies on too narrow a reading of Rodrigues's complaint.  While count one does not explicitly request declaratory relief, the complaint's final, concluding paragraph does.  It is appropriate to review the complaint as a whole in determining the relief sought for each alleged violation of law -- especially on review of a dismissal under Mass. R. Civ. P. 12 (b), 365 Mass. 754 (1974).  See Ritchie v. Department of State Police, 60 Mass. App. Ct. 655, 659 (2004).  Here counts one and two challenge not only the denial of reinstatement, but also PERAC's failure to use age-adjusted standards.  The complaint thus challenges

PERAC's "practices and procedures," and does not merely seek an individual adjudication, as PERAC contends.[12]

Turning to the merits of the question presented, we view that question as what standards should the medical reviewers apply, in the return to service context, in determining whether a "retired member" is "qualified for and able to perform the essential duties of the position from which he retired." G. L. c. 32, § 8 (2) (a). The plaintiff argues that PERAC erroneously decided to apply HRD's initial health and fitness standards, and that instead, PERAC should apply "in-service" standards that "take into account . . . age," as required by c. 31, § 61A, fourth par. PERAC, on the other hand, contends that it is required by c. 32, § 8, to apply HRD's standards, that it has no discretion in the matter, and that the initial standards are the applicable standards.[13]

Because she dismissed the complaint on other grounds, the judge did not address the question of what health and fitness standards apply, or the appropriateness of those standards. The issues are only partially briefed in this court, and we decline

---

[12] Resolving this issue as we do, we need not address the parties' dispute as to whether Rodrigues could seek judicial review of his denial of reinstatement by bringing an action in the nature of certiorari. See G. L. c. 249, § 4.

[13] It is undisputed that HRD has never actually promulgated a set of in-service standards.

to decide them on the record before us.  On remand, the judge and the parties should focus on the structure of the relevant statutory schemes.  Under c. 31, § 61A, initial fitness standards apply to firefighters "when they are appointed to permanent, temporary, intermittent, or reserve positions."  On the other hand, the "restoration to service" provisions of c. 32, § 8, apply to persons, such as Rodrigues, who have previously been active public employees, who are being paid a disability pension, and who are required by statute to return to service if they are fit to do so.  We note, however, that in 2016 PERAC amended its regulations regarding disability retirement, and specifically provided that in determining whether a retiree is "unable to perform the essential duties of the position," PERAC will use HRD's initial standards.  840 Code Mass. Regs. § 10.14 (2016).[14]  In contending that PERAC must apply other standards -- that is, age-adjusted, in-service standards -- Rodrigues will have to address the effect of the 2016 regulation.  In any event, all of these various provisions can be considered on remand; also to be considered is the significance of the fact that HRD has not yet promulgated in-service standards for firefighters.

---

[14] Whether this regulation was filed with and approved by the Legislature may be explored on remand.  See G. L. c. 7, § 50; Pulsone, 60 Mass. App. Ct. at 796-797.

Conclusion.  We affirm the dismissal of counts three through nine of Rodrigues's March 3, 2016 complaint.  We reverse the dismissal of counts one and two, and remand the case to the Superior Court for further proceedings consistent with this opinion.

So ordered.